## GIBSON *v.* RICHMOND & D. R. Co.

### (*Circuit Court, S. D. New York.* February 23, 1889.)

RAILROAD COMPANIES—BONDS AND MORTGAGES—RIGHTS OF MORTGAGEES.

The state of North Carolina, under act Jan. 27, 1849, incorporating the N. C. R. Co., subscribed for $3,000,000 of its $4,000,000 authorized capital stock, with the right to vote thereon, and to appoint eight of the twelve directors. The state created a statutory mortgage upon its stock to secure construction bonds issued by it, and subsequently created a second mortgage on its stock to secure an issue of bonds. Thereafter, and while the road was paying 6 per cent. per annum on its capital stock, defendant, with notice of the rights of the second mortgage bondholders, took a lease of the road at a rental sufficient only to pay the interest on the first mortgage bonds. The charter authorized the N. C. R. Co. to lease its property and franchises, and it was not claimed that the lease was improvident, or in any respect invalid. The complainant, a second mortgage bondholder, filed a bill against the defendant, the lessee, to compel it to account for the excess of earnings above the amount of interest on the first mortgage bonds, upon the theory that by the hypothecation of its shares to the second mortgage bondholders the state impliedly agreed to become a trustee for them, and exercise its control as a majority stockholder in the N. C. R. Co., so as to preserve the earnings for the benefit of their bonds, thus making the earnings a trust fund which complainant could follow into the hands of the defendant, the defendant being a recipient with notice. The defendant demurred to the bill. *Held*, (1) that in the absence of any averment of fraud in the making of the lease the complainant could not maintain the action. (2) That the state was no more a trustee than any other majority shareholder of a corporation who mortgages his stock, and was under no duty to the mortgagee except to conduct itself honestly in exerting its power of control for the interests of the mortgagees and the other creditors and stockholders of the corporation.

In Equity. On demurrer to bill.
*Edward L. Andrews*, for complainant.
*George Hoadley*, for defendant.

WALLACE, J. The complainant is the owner of certain bonds for $1,000 each of the state of North Carolina, created pursuant to an act of the legislature of the state, and containing a certificate executed by the authorized officers of the state, which recites that "ten shares of the stock in the North Carolina Railroad Company, originally subscribed for by the state, are hereby mortgaged as collateral security for the payment of

this bond." The defendant is a lessee of the property of the North Carolina Railroad Company for a term of years. The complainant has filed this bill for himself, and in behalf of other holders of the bonds, to compel the defendant to account for the earnings of the leased railway property in excess of the rent reserved in the lease. The defendant has demurred to the bill.

Succinctly stated, the averments of the bill are that the North Carolina Railroad Company was incorporated by an act of the legislature of the state of North Carolina, passed January 27, 1849; that the act provided that the state should subscribe for $3,000,000 of the $4,000,000 authorized capital stock of the company; should be entitled to appoint eight of the twelve directors of the company, and should be entitled to vote by an official proxy upon its capital stock at all stockholders' meetings; that the state took the stock, and has always exercised its rights to appoint directors and vote; that the state created a statutory mortgage upon the shares of the stock, to secure certain construction bonds issued by it; that subsequently it created a second statutory mortgage upon its shares of stock, to secure an issue of bonds, of which the bonds in suit are a part, and issued $2,500,000 of such bonds, and sold them to the public; and that thereafter, September 21, 1871, and while the railway company was earning and paying 6 per cent. per annum upon its capital stock, and while the state was in default in paying the interest on the second mortgage bonds, the defendant, with full knowledge of the rights of the second mortgage bondholders, took a lease of the railway at a rental merely sufficient to pay the interest on the first mortgage bonds, and has since been in possession of the property, and in receipt of earnings therefrom largely in excess of the rental. The acts of the legislature incorporating the railway company, and authorizing the creation of the construction bonds by the state and the first mortgage upon the shares to secure their payment, are not fully set out in the bill; but, as these are laws of which the courts must take judicial notice, the bill is to be read in connection with their provisions. By the act incorporating the railway company and directing the state to take shares therein, power was granted to the corporation to lease its property and franchises. Such effect was given to section 19 of the act by the decision in *State* v. *Railroad Co.*, 72 N. C. 634, where the lease in question to the present defendant was adjudged to be within the authority of the corporation. The acts creating the statutory mortgages give effect to the lien of the bondholders, at law and in equity, without registry or proof of notice. The bill does not aver that the lease made to the defendant was improvident, or in any respect invalid or vicious. The averment that at the time the lease was made the railway was earning 6 per cent. upon its whole capital, and the rent reserved was only equivalent to the interest on the first mortgage bonds of the state, may be intended to suggest that the property was leased for an inadequate rental; but as the amount of the first mortgage bonds is not mentioned, and as their amount may have been for as much or for more than the amount of the capital stock, this averment does not even insinuate that the lease was improvident. The bill does not seek to have the

lease declared invalid or vacated for any reason. Neither the railway company nor the state is made a party defendant.

The theory of the bill seems to be, and the case for the complainant has been argued upon that theory, that the state of North Carolina was invested, by the legislation under which it became a stockholder of the railway company, with complete control of the affairs of the company; that by the hypothecation of its shares to the second mortgage bondholders it impliedly agreed to become a trustee for them, charged with the duty of exercising its power of control so as to preserve the earnings of the railway, and appropriate them to the payment of the bonds; that consequently the earnings were a trust fund for the bondholders; that by permitting the lease by the railway company to the defendant the state consented to a diversion of the trust fund; and that, as the defendant is the recipient of a trust fund, with notice of the rights of the *cestuis que trustent*, it must account for such of the fund which has come to its hands as is not applicable to the payment of interest to the first mortgage bondholders. The proposition that the state assumed fiduciary obligations towards the second mortgage bondholders which do not ordinarily exist between mortgagor and mortgagee, and which gave the bondholders the right to insist that the railway company should be managed in their interest as a trust property, has been ingeniously presented, but does not seem to have any real substance. The case is not distinguishable, in its legal aspects, from one where an individual, a majority stockholder of the stock of a corporation, has hypothecated his shares by chattel mortgage to a creditor as security for a loan. In such a case it may be assumed that both parties to the transaction understand at the time that the value of the security is to depend upon the financial prosperity of the corporation, and measurably upon the honesty and efficiency of the corporate management; but no promise or duty can reasonably be implied from that understanding that the shareholder who has mortgaged his shares is to use his power of control in the corporate affairs exclusively in the interest of the mortgagee, or is not to consent to or promote any scheme or undertaking in the conduct of its business which is within the scope of its legitimate functions, and which he may believe to be expedient and proper. Certainly no promise or duty can be implied from such an understanding, which would be inconsistent with his obligations to the other shareholders, or his good faith towards the creditors of the corporation. So long as he conducts himself towards the mortgagee honestly in exerting his power of control, he violates no duty, and the latter has no ground of complaint. When, in consequence of a default in payment, pursuant to the terms of the hypothecation, the mortgagee's title to the shares become absolute, he is in a position to substitute himself in the place of the mortgagor, and participate in the control of the corporation, according to the forms and subject to the conditions of the organic law. If, instead of doing this, he nevertheless allows the mortgagor to do so, he ought not to complain, and cannot be heard to challenge any transactions with third persons by the corporation which are effected in the mean time in good faith, and are within the corporate

power. Applying these familiar rules of law to the present case, the second mortgage bondholders cannot assert with reason that the state has violated any fiduciary duty towards them, or that the corporation itself has been in any way a party to the subversion of their rights, unless they are prepared to show—what is not alleged in the bill—that the lease was fraudulent, or *ultra vires*. All persons dealing with a corporation must take notice of the provisions of its organic law. In the present case the second mortgage bondholders were bound to know when they took their security that the railway company was authorized to lease its property and franchises, and should have expected that circumstances might arise under which the interests of the corporation, its stockholders, and its creditors, would be promoted by doing so. They were also bound to take notice of the prior rights of the first mortgage bondholders, originating in the statutory mortgage created by the acts of the legislature, and to anticipate that the interests of these bondholders, to whose lien upon the shares of stock their own lien was subordinate, might require the company to lease its property. The second mortgage bondholders therefore took their securities with the knowledge that circumstances might arise under which it would be not only the right, but the duty, of the state as a majority stockholder in the railway corporation towards the other stockholders and the first mortgage bondholders to promote the leasing of the railway. Certainly it cannot be maintained that the effect of the second mortgage was such as to preclude the shareholders of the railway company, other than the state, and the prior mortgagees of the shares, from deriving the benefit of any legitimate mode of exercising the franchises granted to the corporation which might be expedient.

So far as appears from the bill, the lease in question was a reasonable and legitimate arrangement, and has been acquiesced in since 1871 by the complainant and those whom he represents. It is fair to assume that the North Carolina Railroad Company and the state both regarded it as probably offering a better income than could be derived from the ordinary traffic of the railway, and therefore as an arrangement which would promote the interests of shareholders and bondholders. Very clearly the second mortgage bondholders cannot maintain a suit in equity to charge the defendant with the earnings derived under the lease, when they do not assert that the lease is void or voidable, as between the parties to it. The lease is either a valid contract between the North Carolina Railroad Company and the defendant, or it is an invalid one. If valid, the complainant cannot assail it, and the defendant is entitled to stand upon the terms of the contract, and derive whatever profit it may be able to from operating the road after paying the rent. It cannot be valid as between the parties to it and invalid as to the complainant, unless the second mortgage bondholders have rights or equities superior to those they would have if, when the bonds were not paid, they had demanded and acquired the shares of stock hypothecated to them as collateral security. It may be that they are not in a position to intervene in the affairs of the North Carolina Railroad Company, and cannot,

through their influence at corporate meetings or otherwise, cause such proceedings to be taken by the corporation as it ought to take if the lease were a fraud upon the stockholders whom it represented as trustee in entering into the contract.    But although the complainant may occupy a better position as to matters of procedure and remedy than he would if he were a stockholder, this circumstance cannot prejudice the right of the defendant to insist that the contract cannot be set aside, in whole or in part, unless it is invalid as between the North Carolina Railroad Company as a trustee for its stockholders and itself.    The complainant's cause of action is founded on the rights to which he has succeeded as a mortgagee of the shares of stock, and his position is not assisted, nor is that of the defendant prejudiced, by his neglect to substitute himself as a stockholder in place of a mortgagee of the stock.    For these reasons, and without discussing the other questions which are presented by the demurrer, the demurrer is sustained.