NOYES G. PALMER, Appellant and Respondent, *v.* THE CYPRESS HILL CEMETERY, Appellant and Respondent.

Where, in an action against a corporation for the specific performance of a contract which was *ultra vires*, but not against public policy, the validity of the contract was not questioned by the answer, and it appeared that performance on the part of the plaintiff was accepted by the corporation, *held*, that the question as to the validity of the contract could not be raised upon appeal.

While facts proved in an action tried by the court or a referee, although not found, may be resorted to ·for· the purpose of sustaining the judgment, this may not be done for the purpose of a reversal.

Defendant, a rural cemetery association, incorporated under the act of 1847 (Chap. 133, Laws of 1847), contracted to sell to plaintiff a large number of lots in its cemetery for the purpose of a resale by him. In an action for a specific performance of the contract, defendant in its answer did not question the validity thereof, but denied that it had received payment in full and offered to perform upon payment being made. The evidence showed that blocks of lots were also sold to some of defendant's trustees; it was not found and did not appear that the sale to plaintiff was part of a scheme embracing the sales to the trustees, and there was no finding that the sale was unfair or was produced by illegal means. *Held*, that this could not be assumed on appeal; nor could it be held that the sale was against public policy.

Plaintiff was, at the time of the making of the contract, defendant's surveyor and superintendent. *Held*, that such relation was not fiduciary, but was simply that of employe, and so. did not bring the contract within the condemnation of public policy.

It appeared that plaintiff surrendered a portion of the lots under an agreement that certain payments made by him upon a mortgage should be allowed and credited to him. The referee found that, after payment in full for the lots retained by plaintiff, there remained due him from defendant, $621.14, for which sum, with .interest, judgment was rendered, and also judgment for specific performance as to the lots retained. *Held*, no error; that, although the repurchase was not strictly within the terms of the act of 1875 (Chap. 356, Laws of 1875), authorizing defendant to buy in lots " held for resale in private hands under certificates locating them," as plaintiff did not hold them on certificates, yet, as the amount allowed was within the maximum sum, defendant was permitted by said act to pay, the transaction was not unlawful; and that, as the accounts and dealings between the parties were necessarily the subject of investigation in order to ascertain whether defendant had received payment, it was not error to direct judgment in plaintiff's favor for the balance due him, as incidental to the main relief sought.

(Argued October 13, 1890; decided December 2, 1890.)

CROSS-APPEALS from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 13, 1888, which affirmed a judgment in favor of plaintiff entered on the report of a referee.

This action was brought for the specific performance of an alleged contract by which the defendant agreed to sell to the plaintiff a certain number of lots in its cemetery. The referee directed judgment for the conveyance of certain lots by the defendant to the plaintiff, and for the recovery by the latter of $955.93. The defendant appealed from the entire judgment, and the plaintiff appealed from the affirmance of the money recovery part of it only.

*Homer A. Nelson* for defendant. The agreement attempted to be enforced in this action is null and void. (Laws of 1847, chap. 133, § 11; Laws of 1853, chap. 122; *People* v. *U. Ins. Co.*, 15 Johns. 358; *Beaty* v. *M. Ins. Co.*, 2 id. 109; *N. Y. F. Ins. Co.* v. *Ely*, 2 Cow. 678, 679; *Ex parte Wilcock*, 7 id. 402; *Hosack* v. *College of Physicians*, 5 Wend. 547; *McCullough* v. *Moss*, 5 Den. 567; *Foster* v. *LaRue*, 15 Barb. 323; *Bissell* v. *M. S. & N. I. R. R. Co.*, 22 N. Y. 297, 304; Pom. Eq. Juris. §§ 171, 1405.) The referee's conclusion "that the defendant is indebted to the plaintiff in the sum of $621.14, with interest from the 14th day of April, 1876, together amounting to the sum of $955.93," is erroneous. (7 Johns. 87; 13 id. 258; 7 Cow. 358; 20 Barb. 154.) The decision of the referee that defendant agreed to repay plaintiff the money he had paid for interest on the Williamsburgh Savings Bank mortgage, with interest thereon, compounded every six months, the amount of which was there stated at the sum of $5,309.12 is erroneous; and, if such an agreement was made between Palmer, trustee, and his associate trustee, the same is not binding upon the corporation and is null and void. (*Butts* v. *Wood*, 37 N. Y. 318, 319; *Robinson* v. *Smith*, 3 Paige, 322; Angel & Ames on Corp. 258, 260; *A. R. R. Co.* v. *Blakie*, 30 Barb. 571; *C. C. Co.* v. *Sher-*

*man,* 30 id. 572 ; *Coleman* v. *S. A. R. R. Co.,* 38 id. 201 ; 48 Barb. 371.)

*William G. Cooke* for plaintiff.   The defendant had waived by its answer any possible defense, based upon the alleged invalidity of the contract sued on. (*Duffy* v. *O'Donovan,* 46 N. Y. 223 ; *Pepper* v. *Haight,* 20 Barb. 429 ; *S. Co.* v. *Monheimer,* 9 J. & S. 184.) Plaintiff having performed his part of the contract, and defendant having received the full stipulated consideration, the latter cannot now plead its want of power to make the agreement. (*DeGroff* v. *A. L. T. Co.,* 21 N. Y. 127 ; *Parish* v. *Wheeler,* 22 id. 494 ; *W. A. Co.* v. *Barlow,* 63 id. 70 ; *Castle* v. *Lewis,* 78 id. 134, 135 ; *Woodruff* v. *E. R. Co.,* 93 id. 618, 619 ; *R. R. Co.* v. *Roach,* 97 id. 378, 381 ; *Town of Verona* v. *Peckham,* 66 Barb. 103 ; *Bd. Suprs.* v. *McQueen,* 15 Hun, 551 ; *Hurd* v. *Green,* 17 id. 334, 335.) The distinction between *ultra vires* and illegal contracts cannot be ignored. (*Bissell* v. *M. S. & N. I. R. R. Co.,* 22 N. Y. 258 ; *DeGroff* v. *A. L. T. Co.,* 21 id. 124 ; *Parish* v. *Wheeler,* 22 id. 494 ; *W. A. Co.* v. *Barlow,* 63 id. 62 ; *Woodruff* v. *E. R. Co.,* 93 id. 609 ; *Bd. Suprs.* v. *McQueen,* 15 Hun, 551 ; *Mayor, etc.,* v. *Wylie,* 43 id. 547, 550.) The sale was not illegal or opposed to public policy. (*Kent* v. *Q. M. Co.,* 78 N. Y. 160, 190 ; Laws of 1875, chap. 356 ; *People* v. *City of Brooklyn,* 4 N. Y. 322 ; *Guilford* v. *Bd. Suprs.,* 13 id. 149 ; *Darlington* v. *Mayor, etc.,* 31 id. 190 ; *Hatch* v. *T. Co.,* 9 Abb. [N. C.] 223.) The sale was not *ultra vires.* (*E. N. Y. & J. R. R. Co.* v. *Lighthall,* 5 Abb. [N. S.] 462 ; *Williams* v. *W. U. T. Co.,* 9 Abb. [N. C.] 437 ; *Guilford* v. *Bd. Suprs.,* 13 N. Y. 143 ; *Brewster* v. *City of Syracuse,* 19 id. 116 ; *Howell* v. *City of Buffalo,* 37 id. 272 ; *Duanesburgh* v. *Jenkins,* 57 id. 178 ; *Rogers* v. *Smith,* 5 Hun, 475 ; Laws of 1847, chap. 133, § 4 ; *Barry* v. *M. E. Co.,* 1 Sandf. Ch. 289 ; *Curtis* v. *Leavitt,* 15 N. Y. 64 ; *Leslie* v. *Lorillard,* 110 id. 536 ; *Legrand* v. *M. Assn.,* 80 id. 638 ; *C. M. Co.* v. *Platt,* 3 Daly, 263.) It was insisted at the General Term that the plaintiff's salary was not $3,000, because of an irregularity in the resolution by which it was fixed.

Defendant is not in a position to raise this question. (*Thayer v. Marsh*, 75 N. Y. 342; *Drucker v. R. R. Co.*, 106 id. 157, 162.) The first account was presented to the trustees in January, 1875, and retained without objection or question until produced by defendant at the trial. It shows a balance in plaintiff's favor, June 30, 1874, of $3,247.60. The second account shows an indebtedness to him, June 30, 1875, of $830.60. It was presented in the fall of the same year, and was not only tacitly acquiesced in, like the other, but was referred to a committee and audited, and finally admitted and approved by the board. These are binding upon the parties as accounts stated. (*Phillips v. Belden*, 2 Edw. Ch. 1; *Lockwood v. Thorne*, 11 N. Y. 170; *Bullard v. Raynor*, 30 id. 197; *Harley v. E. W. Bk.*, 75 id. 618; *Clark v. M. Bk.*, 15 Wkly. Dig. 505; *Jugla v. Trouttet*, 120 N. Y. 21; *Mowry v. Bishop*, 5 Paige, 98; *Higbie v. Heath*, 3 T. & C. 783; *Young v. Hill*, 67 N. Y. 167; *N. Y. L. Ins. Co. v. Manning*, 3 Sandf. Ch. 58; *Ritter v. Phillips*, 53 N. Y. 586, 590.) It will not be necessary to have a new trial, but this court may correct the judgment so that it shall award the right amount. (*Wolstenholm v. W. Co.*, 64 N. Y. 274; Code Civ. Pro. § 1317; *Gautier v. D. Co.*, 13 Hun, 525; *Hanley v. Crowe*, 19 N. Y. S. R. 828; *Price v. Price*, 33 Hun, 435; *Canady v. Stiger*, 3 J. & S. 433; 55 N. Y. 452, 456; *Schreyer v. Mayor, etc.*, 40 id. 255; 66 id. 656; *Millard v. McMullin*, 68 id. 346, 355; *Hannahs v. Hannahs*, Id. 610.)

Bradley, J. The defendant was incorporated prior to 1850, pursuant to the provisions of chap. 133 of Laws of 1847, authorizing the incorporation of rural cemetery associations. The plaintiff in the complaint alleged that in June, 1864, he purchased of the defendant four hundred lots in its cemetery at the price of ten thousand dollars; that he afterwards sold fifty of them, for which deeds were given by the defendant on his order; that he fully paid the defendant the purchase-money; and that the defendant refused to make certificates or deeds for the remaining three hundred and fifty lots. He,

therefore, demanded judgment directing specific performance
by the defendant of its alleged contract. The defendant, by
its answer, admitted the making of the agreement as alleged,
but denied that the consideration had been fully paid; and,
further, alleged that the plaintiff, upon terms mentioned by
him, proposed to relinquish to the defendant two hundred of
such lots, and that afterwards, on April 14, 1876, the defend-
ant accepted such offer by the following resolution adopted by
its trustees: "Resolved that Mr. Palmer's offer to surrender
to the cemetery two hundred lots on being allowed the interest
he has paid to the Williamsburgh Savings Bank, with interest
thereon compounded every six months, be accepted, and the
amount as proposed be allowed him on settlement, such amount
being five thousand three hundred and nine $\frac{15}{100}$ dollars;"
that after crediting him that amount there remained due from
the plaintiff to the defendant $2,419.35; that on the liquida-
tion by him of such indebtedness the "defendant is ready to
convey, as the plaintiff may request, all such plots as he has
not sold or surrendered;" and that on the performance by the
plaintiff the "defendant is, and at all times has been, ready to
convey said lots to the plaintiff, or on his order." The plain-
tiff held the position of surveyor and superintendent of the
defendant from July, 1849, to May, 1864, and from July 1,
1864, to November, 1875. The defendant further alleged
that after the location of the plots within his purchase the
plaintiff, in violation of his duty as such superintendent and
without authority, caused an avenue to be opened so as to pro-
mote the sale of them, and thereby blotted out a large number
of lots, and in doing it diverted the labor and resources of the
defendant from their legitimately authorized purposes. In
addition to such charge against the plaintiff the only issue
presented by the pleadings was whether the purchase-money
which the plaintiff undertook to pay for the 400 lots, or for
the residue after deducting the 200 of them in the event they
had been relinquished as alleged by the defendant, had been
paid. And this depended upon the state of the accounts
between the plaintiff and the defendant, which was a subject.

of controversy on the trial. The referee having found that the agreement of sale was made as alleged and admitted by the pleadings, and that the plaintiff had surrendered to the defendant 200 of the lots as alleged in the answer, and sold fifty-two $\frac{220}{400}$ lots, further found that after adjusting the accounts between the parties and crediting the plaintiff with the amount which the defendant agreed to allow him for the surrender of those lots, there remained due to him from the defendant $621.14, which, with interest, made the amount for which judgment, in addition to the other relief, was directed.

It is urged by the defendant's counsel that the alleged agreement to sell to the plaintiff 400 lots was invalid, and that it should not have the support of the judgment of the court for its performance. The sale of that number of lots to the plaintiff was not within the spirit or purpose of the statute from which the defendant derived its corporate existence and powers. The purpose for which the defendant was incorporated was to procure and hold land "to be used exclusively for a cemetery or place for the burial of the dead." (L. 1847, ch. 133, §§ 1, 4.) The statutory direction is that at least one-half of the proceeds of sales of lots be applied to the payment of the purchase-money until fully paid, and the residue to the preservation, improvement and embellishment of the cemetery, and that the entire proceeds of sales be so applied after the payment of the purchase-money, etc. (Id. § 7.) And the lands are exempt from taxes, and not liable to sale on execution, or to be applied in payment of debts due from individual proprietors. (Id. § 10.) It is contemplated by the statute that the trustees of the associations created pursuant to it should, with a view to the proper management of cemeteries, designate the terms and restrictions upon which sales and conveyances be made. And although the lands purchased by such an association cannot legitimately be devoted to any other purpose than that of a cemetery, the unqualified sale of large portions of it to individuals for resale by them, possibly might deny to the trustees the power to control or regulate the terms or conditions of the sales, which it was, by the statute, con-

templated they should exercise in that respect. It may, therefore, be seen that the execution of the provisions of the act of incorporation, according to its policy, might be somewhat embarrassed by the sale to individuals for speculative purposes on their part, of large blocks of cemetery lands by the trustees of the association. But inasmuch as the defendant by its answer raises no question as to the validity of the contract with the plaintiff, but admits its force as such, and declares its readiness to perform the contract upon payment of the purchase-money, the question whether it was effectually made, or was within the corporate power of the defendant to make it, does not arise for consideration. (*Duffy* v. *O'Donovan*, 46 N. Y. 223.) And the court is not called upon to declare the contract ineffectual for illegality, unless it was inherently so, or, in view of the circumstances under which it was made, contrary to public policy in such sense that it could not properly have judicial sanction. If the contract was *ultra vires* merely, there is no occasion for the court in this action to deny to the plaintiff the benefit of its provisions, since the validity of it is recognized by the defendant, and performance has been accepted by it from the plaintiff. (*Parish* v. *Wheeler*, 22 N. Y. 494; *Whitney Arms Co.* v. *Burlow*, 63 id. 62; *Rider Life Raft Co.* v. *Roach*, 97 id. 278.) The referee has not found what motive actuated the parties, or either of them, to make the contract, but there was some evidence tending to prove that in it was the purpose of raising money for the association. The plaintiff paid five thousand dollars on the purchase and assumed the payment of a mortgage for like amount held by a savings bank at the time the contract was made. And it appears that some of the trustees of the defendant, about the same time, became purchasers of blocks of lots which, including those in the plaintiff's purchase, numbered 1,560. It is difficult to see any justification for the trustees to become purchasers from the defendant an~ ~o deal with the property for their own benefit or advantage. That was clearly in violation of their fiduciary relation to the defendant, and was contrary to public policy. (*Butts* v. *Wood*, 37 N. Y. 317; *Barnes*

v. *Brown*, 80 id. 527; *Duncomb* v. *N. Y., H. & N. R. R. Co.*, 84 id. 190.) But it was not found by the referee, nor does it necessarily appear by the evidence, that the sale to the plaintiff was part of a scheme embracing the sales made to the trustees. The plaintiff was not a trustee at the time the contract with him was made, and his relation of superintendent was not fiduciary, but was that of employe, and as such he was subject to the direction of the trustees. He became trustee in 1874, and continued such until in October, 1875. In view of the findings of the referee, it cannot, on this review, be said that the purchase by the plaintiff was on his part unfair, or that it was produced by means illegal or within the condemnation of public policy. It is suggested by the defendant's counsel that the facts which the evidence tended to prove should have the same consideration to which they would be entitled if within the issues of the pleadings. While that would be so for the purpose of sustaining the judgment, the same rule is not applicable for its reversal when not within the findings of the court or referee. (*Burnap* v. *National Bank*, 96 N. Y. 125.) In support of his proposition are cited *City N. Bank* v. *Phelps* (86 N. Y. 484) and *Fowler* v. *Bowery Savings Bank* (113 id. 450). But it may be observed that in the former the defect in the complaint was not specified as a ground upon which the motion to dismiss the complaint was made; and in the other case the fact not alleged was not only proved without objection, but was found by the court. In the present case, however, the evidence did not require the conclusion that the plaintiff was chargeable with anything in inducing the sale to him, or in obtaining the contract, affecting its validity other than what appeared by its terms as alleged, and in the provisions of the statute relating to the powers and duties of the trustees bearing upon the subject. Nor does it necessarily appear what the referee would have found in that respect if request had been made. The exception to the denial of the motion to dismiss the complaint was not well taken. The finding of the referee that the plaintiff was employed by the defendant and acted as superintendent from July 1, 1864,

to November 25, 1875, at an annual salary of three thousand dollars, was challenged by the exception of the defendant, because by the employment, when made, he was to have $1,200 per year and ten dollars for each lot sold by way of compensation, and in August, 1873, the agreement was so modified that the trustees undertook to allow him $3,000 per year from July 1, 1864. This, apparently, was not justified by business principles, and it may be that it was not in fact But there is evidence tending to prove that, at the time of such employment, it was contemplated that the plaintiff should have a salary of $3,000, and that the commissions on sales, with the $1,200, would produce it. As the plaintiff was unable to realize that amount of salary from the compensation so measured, he called attention of the trustees to the deficiency; and thereupon they, in August, 1873, adopted the following resolution: "WHEREAS, The twelve hundred dollars per annum and commissions on sales have not equaled the expected sum, therefore, *Resolved*, That the committee, in settling with Mr. Palmer, superintendent, will make good to him the salary of three thousand dollars per annum from July 1, 1864." And on August 20, 1875, the trustees, by resolution, directed that the claim of the plaintiff for salary of $3,000 per annum from July, 1864, be allowed, subject to audit by the secretary and treasurer, as to payments made thereon. The defendant, through the action of its trustees, did what it could to give the plaintiff the benefit of an increased salary for nine years' passed services, and it may be that this was done without any legal obligation, and upon considerations of good faith. But no issue upon that subject is presented by the pleadings. The plaintiff was credited with it and the defendant, by its answer, expressly recognizes and admits the plaintiff's right to the allowance of an annual salary of three thousand dollars from July 1st, 1864; and for that reason it must now be assumed that the facts were such as to justify it. And the same may be said of the exception to the finding in support of the consideration for the relinquishment of the two hundred lots by the plaintiff to the defendant. The plaintiff having assumed

the payment of the mortgage to the savings bank, and paid interest upon it for upward of eleven years, proposed to make the surrender of the 200 lots upon being relieved from the payment of the mortgage, and on being allowed the amount so paid by him upon it with interest compounded semi-annually upon such payments. This offer was accepted and the plaintiff was credited with $5,309.15, the amount in that manner produced; and that credit is by the defendant's answer distinctly admitted as correctly allowed to the plaintiff pursuant to the arrangement made with him for such surrender of lots. This purchase by the defendant may not strictly have been within the provisions of the Laws of 1875, chap. 356, because the plaintiff did not hold them on certificates for resale, but the amount which the defendant allowed the plaintiff for them, was within the maximum sum which the defendant was permitted by that act to pay for lots held by private owners on such certificates.

On this review, consideration can be given only to questions raised by exceptions; and it must be assumed, unless his findings indicate otherwise, that the determination of the facts by the referee was made in reference to the issues as presented by the pleadings. In that view, his findings of fact seem to be supported; and they warrant the conclusion that the plaintiff was entitled to the specific performance directed. The ulterior effect upon the sale of the lots held by the plaintiff is not the subject for consideration here inasmuch as they cannot be diverted from burial purposes, for which the land was originally purchased and to which it was necessarily devoted by the defendant. After a careful examination of the evidence on the subject, the conclusion is reached that the referee was permitted by it to find that after payment of the consideration of his purchase pursuant to the contract, there was due the plaintiff from the defendant the amount recovered by him of the defendant and no more; and that as the accounts and dealings between the parties were necessarily the subject of investigation to ascertain whether the defendant had received payment of such consideration, it was not error to direct judg-

ment in his favor for the balance due to him, as incidental to the main relief sought for and awarded.

The judgment should be affirmed, without costs in this court to either party.

All concur.

Judgment affirmed.