ALICE A. ELYEA, in Behalf of Herself and Other Persons Similarly Interested, Appellant, *v.* LEHIGH SALT MINING COMPANY and Others, Respondents, Impleaded with DAVID J. BISSELL.

*Pledgee of stock of a New Jersey corporation — right to have a transfer of its property, made with the assent of all its record stockholders, set aside.*

Where stock in a mining corporation (organized under the laws of New Jersey, which authorized every pledgor of its stock to represent the same at meetings and to vote as a stockholder) has been pledged as collateral to a loan, but not transferred on the books of the company, and the record owner has executed, with other stockholders, a paper reciting that the business of the company had become unprofitable and authorizing a contract for the sale and transfer of their stock and the property of the corporation to a competing company, which company has afterwards purchased the property in good faith, the pledgee of such stock is not in a position to maintain an action to have such transfer set aside as *ultra vires* and void as to her, to have the value of her stock ascertained and declared a lien on the property and to have the property sold for her benefit and for an accounting and receivership.

APPEAL by the plaintiff, Alice A. Elyea, in behalf of herself and other persons similarly interested, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Genesee on the 10th day of October, 1898, upon the report of a referee dismissing the complaint, without costs to either party.

This action was brought to have a transfer of the property, rights and franchises of the Lehigh Salt Mining Company to the Retsof Mining Company declared *ultra vires* and void as to the plaintiff, to have the value of the plaintiff's stock ascertained and declared a lien on the property, to have the said property sold for her benefit, and for an accounting and receivership, and for other and further relief.

*George Bowen*, for the appellant.

*William B. Putney* and *Henry B. Twombly*, for the respondents.

HARDIN, P. J.:

Plaintiff in her complaint alleges that the Lehigh Salt Mining Company was organized under the laws of the State of New Jer-

sey and had its place of business in the town of Le Roy, and that it was organized to acquire by purchase, lease or otherwise, lands having veins of rock salt therein, and to sink shafts therein for the purpose of reaching and mining the same. It was stated in its articles of incorporation that the principal part of its business was to be carried on in the town of Le Roy. Its capital stock was stated in its articles to be $1,500,000, of which $300,000 was preferred stock, and $1,200,000 was common stock. The company was organized about July 7, 1891, and the defendant Fuller became its business manager and acted as such down to the time of the commencement of this action. On the 27th of January, 1892, there were issued to David J. Bissell by the corporation 200 shares of the preferred stock, fully paid up and non-assessable, and a certificate for such shares delivered to him in the ordinary form to indicate his ownership of the stock. On the 9th of May, 1893, Bissell borrowed of this plaintiff $4,000 for the term of five years, and gave his promissory note, and at the same time, as collateral security for the payment of that indebtedness, Bissell indorsed on the back of the certificate of the shares of stock, so issued to him, an assignment and delivered the certificate with the assignment as collateral security to said note. The shares of stock were never transferred on the books of the Lehigh Salt Mining Company to the plaintiff. It appears that the business of the Lehigh Salt Mining Company was not profitable, and that by reason of severe competition it was not able to carry on its business so as to make profits for its shareholders.

The Retsof Mining Company was organized under the laws of the State of New York and engaged in the same kind of business as the Lehigh Salt Mining Company in the county of Livingston.

The Lehigh Salt Mining Company acquired by purchase a large tract of land and mineral rights under other lands which are particularly described in the complaint, and that company purchased from time to time large quantities of machinery and built large and extensive works for mining purposes, sunk shafts, and for several years thereafter and up to 1895, carried on a large business in the mining and selling of rock salt. It also had a system of railroads upon its lands, and erected residences, stores and offices, and employed a great number of operatives in mining and selling salt.

It is found as a fact that the business of the Lehigh Salt Mining Company "became unprofitable owing to the number of companies engaged in the business and the reduction of prices resulting from competition and the character and condition of the salt mined by said company, and during the month of May, 1894, a paper writing was duly executed by all the stockholders whose names were on the stock books of said defendant Lehigh Salt Mining Company, including the defendant David J. Bissell reciting that the business so carried on had become unprofitable and that the defendant Fuller should act as proxy and attorney in fact for the said stockholders, and to make, execute and sign for them, in their name or in the name of said Fuller as trustee, a contract or agreement to carry out the sale and transfer of their stock and the property of the said Lehigh Salt Mining Company to a competing company which, it was therein recited, had proposed to purchase the same."

The contract or agreement just mentioned was executed by David J. Bissell in common with the other stockholders, and it was agreed between the stockholders that they should assign and transfer to the defendant Fuller their respective shares of stock so that the same could be by him transferred and delivered to the purchasers for the purpose of carrying out the sale; and they also agreed that said stockholders should accept from said Fuller their just and equitable *pro rata* share of the proceeds of such sale when made, whether the same be in stock or bonds, or both, of any other corporation.

It is found as a fact that Fuller, in pursuance of the agreement of the stockholders and by authority of the directors of the defendant Lehigh Salt Mining Company, "in good faith, sold and delivered the stock and the greater part of the property of the defendant Lehigh Salt Mining Company to the defendant The Retsof Mining Company, * * * being one of the competing companies with defendant Lehigh Salt Mining Company at the time of such sale, and received in payment for the said property and stock the bonds and stock of said Retsof Mining Company to the amount agreed upon upon such sale and which said Fuller deemed a fair price therefor."

The agreement entered into by the stockholders required that before any distribution should be made of the proceeds of any sale

effected, "all the debts and obligations of said Lehigh Salt Mining Company should be paid and extinguished and that the legitimate expenses incurred in effecting such sale and transfer should be paid."

It is found as a fact that the Lehigh Salt Mining Company was indebted to various persons and that a portion of the proceeds derived from the sale of some of the machinery of said company was used to pay debts of said company; and that the company was at the time indebted to the Lehigh Valley Railroad Company in the sum of $230,000, for which said railroad company had a mortgage upon the property of the Lehigh Salt Mining Company; and that to procure a discharge of such mortgage it was agreed that $500,000 in bonds of the Retsof Mining Company should be delivered to said railroad company as security for the payment of said indebtedness, and of that amount there were afterwards surrendered by such railroad company seventy-seven of such bonds which were sold and the proceeds used to pay an indebtedness of said Lehigh Salt Mining Company.

It is also found that, after the sale to the defendant Retsof Mining Company, "by agreement of all the stockholders whose names were recorded on the stock books of said company, including defendant David J. Bissell, the defendant Edward L. Fuller, as trustee, was authorized to transfer or sell three hundred thousand dollars of the stock of the said Retsof Mining Company, received as part of the consideration of such sale of Lehigh Salt Mining Company stock and property for the purpose of acquiring the Livonia Salt & Mining Company and the Greigsville Salt and Mining Company, in order to complete the consolidation of the four salt mining companies in this State, and that such stock was thereafter used for that purpose."

It is found as a fact "that the whole amount received by defendant Edward L. Fuller, on account of the sale of the stock and property to the Retsof Mining Company, was five hundred thousand dollars in bonds and eight hundred thousand dollars in stock of said Retsof Company. That, after such payments above mentioned there was left in his hands for distribution among the stockholders of said Lehigh Salt Mining Company the sum of five hundred thousand dollars in stock of the said Retsof Mining Company."

It was further found that "thereafter the stockholders of record of such company, the Lehigh Salt Mining Company, by an agree-

ment in writing agreed to deliver to William Connell, Treasurer, all of their stock, both common and preferred, for the purpose of settling up the affairs of the said company, it being understood that the capital stock of said company was to be reduced to the sum of $50,000, all of which should be represented by common stock, and that said stockholders were to receive the same proportion of said $50,000 of stock as they then held in the original capital of said Lehigh Salt Mining Company, and that among the stockholders to such agreement was defendant David J. Bissell."

It is also found as a fact that Fuller, as such trustee, " offered to deliver to defendant David J. Bissell the amount of stock which he would be entitled to under the agreement above mentioned on the surrender of the original stock held by him, and that defendant David J. Bissell declined to receive such new stock or to surrender the certificate of stock pledged to the plaintiff in this action, and that neither defendant David J. Bissell or the plaintiff has requested the said Edward L. Fuller, as such trustee or otherwise, to turn over to them anything that came to his hands from the sale of the said property, or to make any account to them therefor before the commencement of this action."

It is found as a fact that the laws of the State of New Jersey, under which the Lehigh Salt Mining Company was incorporated, " provided that any such company may, by a vote of two-thirds in interest of the stockholders, change the nature of its business, and, by a like vote, to decrease the amount of its capital stock or to change the par value thereof ; and, also, that shares of stock in every corporation shall be deemed personal property, and shall be transferrable on the books of such company in such manner as the by-laws provide ; and whenever any transfer of shares shall be made for collateral security, and not absolutely, the same shall be so expressed in the entry of said transfer, and that any person who shall pledge his stock as collateral security, may, nevertheless, represent the same at all meetings, and may vote accordingly as a stockholder."

The referee found as a conclusion of law that the plaintiff was not entitled to recover against any of the defendants, and that the defendants were entitled to a judgment dismissing the complaint. Exceptions were taken to the conclusions of law.

Doubtless, Bissell, when he signed the agreement consenting to

give authority to Fuller to sell the property of the Lehigh Salt Mining Company, supposed he had authority to join with the other stockholders in the agreement then made. It seems that section 39 of the General Corporation Law of New Jersey provides in terms that "Every person who shall pledge his stock as collateral security, may, nevertheless, represent the same at all such meetings, and may vote accordingly, as a stockholder."

The shares of stock, pledged to the plaintiff for the loan of money, she could only hold for the purpose of security as long as the right of the (debtor) " to redeem them by the payment of the debt was not extinguished by a lawful sale."

In the course of the opinion delivered in *McHenry* v. *Jewett* (26 Hun, 454), DANIELS, J., said : " Until the pledge was enforced, and the title made absolute in the pledgee, and the name was changed on the books, the pledgor should be received to vote." (*Lawrence* v. *Maxwell*, 53 N. Y. 19.)

In Cook on Stock and Stockholders (§ 468) it is said : " The stockholders of a corporation may, together with the directors, cause the corporate property to be sold to a new corporation in exchange for the stock of the latter. A pledgee of stock in the former corporation cannot, after the sale, undo it, nor hold the latter corporation liable. His remedy is against the pledgor and the first corporation."

The case of *Leathers* v. *Janney* (6 South. Rep. [La.] 884) seems to sustain the position taken by the referee, and to hold that a pledgee of stock of the selling corporation " had no rights as against the buying corporation, but his remedy, if at all, was against the pledgor of the stock."

If it be assumed that the pledgor has impaired the security held by the plaintiff and that the plaintiff has a remedy by action against the pledgor for damages for the injury to the value of such security, there seems to be no satisfactory evidence in this case which would enable the court to determine the extent of the injury sustained by the pledgee, if any ; nor are the pleadings framed with a view to a recovery of damages from the pledgor.

It is said in section 468 of Cook on Stock and Stockholders that " the pledgor may cause the corporate property to be leased at a rental which will not yield any dividends, and yet the pledgee cannot attack the validity of the lease," and to support that doctrine the

case of *Gibson* v. *Richmond, etc., R. R. Co.* (37 Fed. Rep. 743) is cited.

Upon the findings made by the referee, and the evidence found in the appeal book, it is reasonable to conclude that the sale made by the Lehigh Salt Mining Company was within the powers of the corporation so making the sale, and that its shareholders collectively could confer authority upon Fuller to make the sale.

In the course of the opinion delivered in *Campbell* v. *American Zylonite Co.* (122 N. Y. 460) it was said : " Collective or corporate powers common to all stockholders may usually be exercised by a registered shareholder, though he has assigned all of his shares, and his action will bind his assignee holding under an unregistered transfer and all others. These powers being conferred on corporations and their shareholders, purchasers are bound to know that they may be exercised by their assignors until the transfers are registered in their names."

In *Holmes & Griggs Mfg. Company* v. *Holmes & Wessell Metal Co.* (127 N. Y. 252) it was held that a corporation organized under the General Manufacturing Act of 1848 (Chap. 40) " has power, with the consent of all its stockholders, to sell its plant to another corporation and to retire from business, taking payment in the stock of the other corporation." In the course of the opinion delivered by HAIGHT, J. (at p. 260), it was said : " The plaintiff has sold its rolling-mill, machinery, etc., to the defendant. It has taken stock in the latter company in payment therefor. Inasmuch as this was done with the consent of all of the stockholders, it being the act of a private corporation, not in any manner harming the public, we see no reason for condemning its title to the stock so obtained." (Citing *Palmer* v. *Cypress Hill Cemetery*, 122 N. Y. 429.)

There is nothing in the findings of fact made by the referee, or in the evidence, which indicates that the Retsof Mining Company did not become a purchaser in good faith, and, therefore, its acquisition of the property of the Lehigh Salt Mining Company should be sustained. (*Kent* v. *Quicksilver Mining Company*, 78 N. Y. 187.) In the course of the opinion delivered by FOLGER, J., it was said : " Where third parties have dealt with the company, relying in good faith upon the existence of corporate authority to do an act, there it is not needed that there be an express assent thereto on the part of

the stockholders to work an equitable estoppel upon them. Their conduct may have been such, though negative in character, as to be taken for an acquiescence in the act. * * * We suppose acquiescence or tacit assent to mean the neglect to promptly and actively condemn the unauthorized act, and to seek judicial redress, after knowledge of the committal of it, whereby innocent third parties have been led to put themselves in a position from which they cannot be taken without loss."

Evidently the plaintiff in the case in hand did not act immediately after deriving information of the sale she now seeks to question.

In *Skinner* v. *Smith* (134 N. Y. 240) it was held, viz.: " Stockholders of a private corporation may be denied equitable relief against acts of the corporation which do not affect the public, but only the interests of its stockholders, and which, although *ultra vires*, are not *per se* illegal or *malum prohibitum*, where the stockholders asking for relief have assented to those acts, or have acquiesced therein with full knowledge of the facts. A manufacturing corporation may discontinue its operations, when unprofitable, for the purpose of protecting its shareholders from further loss."

Evidently the business of the Lehigh Salt Mining Company had become unprofitable, and the circumstances were such that it was reasonably supposed by its stockholders that a sale of its assets, which should facilitate avoidance of severe competition, would be advantageous.

The transaction did not operate to give one shareholder a preference over another shareholder. The transaction affected the general affairs of the corporation in which every shareholder of record was entitled to have a voice and to participate. It is not apparent that the plaintiff is so circumstanced as to be authorized to undo the transaction entered into with the assent of all the stockholders of record and with the directors of the Lehigh Salt Mining Company.

There is no evidence in the appeal book which indicates that the Retsof Mining Company had any knowledge of the plaintiff's interest in the 200 shares of the stock pledged to her prior to its consummation of the purchase from the Lehigh Salt Mining Company. Nor is there any evidence to indicate that any of the other parties, other than Fuller, had any actual knowledge or notice of the pledging of the shares by Bissell to the plaintiff.

We find nothing in the evidence indicating bad faith, or warranting the conclusion that the transactions which are sought to be reviewed on the part of the two corporations were fraudulent in fact or entered into with the intent to injure or impair any of the rights of the plaintiff. We think the conclusions of law stated by the referee should be sustained.

All concurred.

Judgment affirmed, with costs.