M. Antoinette DuBois et al., Plaintiffs, v. Fantinekill Cemetery Association, Defendant.

Supreme Court, Ulster Trial Term, January, 1922.

Cemetery associations — lots in cemetery to remain indivisible — when consent of association to transfer of a part of lot not compelled — Laws of 1847, chap. 133, as amended in 1852 — Membership Corporations Law, § 69.

The purpose of the statute relating to cemetery associations (Laws of 1847, chap. 133, as amended by chapter 280 of the Laws of 1852) that " all lots or plats of ground designated on the maps filed  *  *  *  and numbered thereon as separate lots by the corporation, shall be indivisible," and which said provision is now included in section 69 of the Membership Corporations Law, is to prevent the replatting or changing of the map of the property of the cemetery association. It is not the purpose of conveying a cemetery lot that it should be used for speculation by the purchaser through division and sold in competition with the association.

A deed from the defendant, a duly incorporated cemetery association, made in 1891, purported to convey to the " estate of Gilbert DuBois " by a designated number a lot in its cemetery, containing about 630 square feet by the following description: "A piece or parcel of land in the cemetery of said association,  *  *  *  delineated and laid down as Lot No. 197, on the map or plan of the said cemetery in the .possession of the said association." The deed among other conditions showing conclusively that the transfer was for no other purpose than for use as a cemetery lot, contained the following: "All lots shall be held in pursuance of an Act of the Legislature of the State of New York, passed April 27, 1847, and the Acts amendatory thereof, and shall not be used for any other purpose than as a place for the burial of the dead." Nearly thirty years later the defendant association refused to approve a deed which from the description attempted to convey and make a division of said lot No. 197 and to transfer 250 square feet to be set off in the southwest corner of said lot No. 197. *Held*, that it appearing in an action to compel the defendant to grant its consent to such transfer that the " estate of Gilbert DuBois " at the time of the conveyance to it of said lot had no enforcible claim against the defendant, the complaint will be dismissed upon the merits, with costs.

Action brought by the plaintiffs to recover judgment requiring the defendant to approve a proposed deed of a portion of a cemetery lot.

*Fowler & Loughran*, for plaintiffs.

*John R. DeVany*, for defendant.

Rosch, J. The defendant is a cemetery association organized and existing under the laws of this state, owning a cemetery at or near Ellenville, Ulster county, N. Y. In the years 1882, 1883 and 1884 one Gilbert DuBois made six checks payable to N. N. Elting,

treasurer of the defendant, for various amounts, aggregating the sum of $264.73. These checks were indorsed and subsequently deposited to the credit of and used by the defendant association. It does not appear from the proof that any note or obligation was given for them, and under the proof it cannot be determined whether the checks were given as advancements of money, collections made, or as gratuities. It does appear, however, that some time prior to 1882, and even prior to June 17, 1879, Gilbert DuBois did advance money to the defendant corporation in the amount of about $430. The minutes of the meeting of the association of June 17, 1879, show the following resolution:

" On motion of Gilbert DuBois, duly seconded, it was further resolved that a proposition of Isaac Corbin and Gilbert DuBois (each holding notes of $355.25 and $74.57, being a total of $859.84, of indebtedness against the association), to accept for said indebtedness the total of the unused map appropriated lot of about 35 acres, lying to the west and in the rear of the cemetery ground, and that such indebtedness be accepted, and that the title to said lot not in the name of Gilbert DuBois, be transferred to Isaac Corbin and Gilbert DuBois or their representatives."

From the proof, as well as the dates of the six checks, it is clearly apparent that the above-quoted resolution does not apply in any way to the indebtedness, if any, created by such checks. The resolution, however, may be enlightening upon the manner of dealing and relations of Gilbert DuBois to the defendant association. Nowhere, so far as the trial disclosed, was there any record made, or references in the minutes of the defendant association to the six checks before referred to.

Gilbert DuBois died in about the year 1886, and left him surviving his widow and five children, M. Antoinette DuBois and Mary J. DuBois, two of the plaintiffs, a son Alvin, a daughter Catherine and a son Gilbert. The widow, son Alvin and daughter Catherine have since died. Three of the children, being the two plaintiffs named, and Gilbert DuBois, 2d, are still living.

By the will of Gilbert DuBois, his three daughters and son Alvin P. DuBois were residuary legatees and devisees. Alvin P. DuBois, who was named as one of the executors in his father's will, and who was also one of the residuary legatees and devisees, subsequently died testate, leaving his property to his widow Mary E. DuBois, who has since died, and his son Louis DuBois, one of the plaintiffs in this action.

On the 29th day of September, 1891, and about seven years subsequent to the date of the last of the six checks before referred to, and more than nine years subsequent to the date of some of

the checks, there was signed by the president and treasurer of the defendant five separate deeds each purporting to convey to the " estate of Gilbert DuBois," a separate lot in the Fantinekill Cemetery, located in the town of Wawarsing, Ulster county. The lots claimed to have been conveyed were referred to as lots 265, 196, 197, 198 and 199. The consideration of these separate deeds seems to have been based upon a computation of ten cents per square foot of the area of each separate lot. The total consideration of the five deeds, offered in evidence, aggregates $278.40. This does not include the consideration that might have been expressed in the deed of lot 196, which was subsequently sold to or taken over by one Taylor.

The total of considerations expressed in the separate deeds exceeds the amount of the checks received in evidence and before referred to. The difference may be explained, however, by interest that might have been added. Nowhere in the proof does it appear that any other consideration was paid for lots than as shown by the checks given from seven to nine years before the deeds were signed. The deeds in question were not given pursuant to the resolution of the trustees of the defendant, nor was there any record made in relation to them. The deeds, however, were signed by the president and treasurer of the defendant and its seal affixed. Such seems to have been in conformity to the law in force at that time (Laws of 1847, chap. 133). Sometime in about 1919 the plaintiffs were desirous of selling a portion of one of the lots described in the deeds of September 29, 1891, and caused to be prepared by their attorneys, a deed dated July 17, 1919, in which M. Antoinette DuBois, Mary J. DuBois, and Louis DuBois, plaintiffs, and Clara L. DuBois, wife of Louis DuBois, were named as grantors, and one Cloys Nathan Hurd, of Napanoch, was named as grantee. The deed as prepared was duly executed. It is the short form of warranty deed with covenants of quiet enjoyment and warranty of title. This deed as prepared also contained a provision that the lot conveyed was subject to the restrictions, conditions and limitations set forth in the deed of lot 197, dated September 29, 1891, from the Fantinekill Cemetery Association to the estate of Gilbert DuBois. The deed to Hurd, after having been signed and executed, was presented to the defendant for the purpose of consenting to the transfer. The consent as prepared was indorsed on the deed for signature by the defendant corporation by its president and treasurer. On the 8th day of December, 1919, the president of the defendant wrote a letter to the attorneys for the plaintiffs, informing them that at a meeting of the board of trustees of the defendant held on the fifth of December, the matter of

consent to the transfer of the lot held by the estate of Gilbert DuBois was refused. Soon after this action was brought to compel defendant to grant its consent to the transfer.

All the deeds from the defendant to the estate of Gilbert DuBois were of the same form except the reference to the number of the lot, the area and the consideration expressed. One of them purports to convey lot No. 197, containing about 630 square feet. The description of this lot No. 197, as shown in such deed, is as follows: " A piece or parcel of land in the cemetery of said associa‑ tion, known as Fantinekill Cemetery located in the Town of Wawarsing, in the County of Ulster, and State of New York, and which piece or parcel of land is delineated and laid down as Lot No. 197, on the map or plan of the said cemetery in the possession of the said association."

From this description it is plain that the lot is a designated lot on the map and plan of the cemetery which was in possession of the association. Such practice was in conformity with the law which required that the cemetery be divided into lots or plats of such size as the trustees might direct, and a map or maps of such surveys be filed and kept in the office of the association. Laws of 1847, chap. 133, § 4. The deed tendered by the plaintiffs and to which they seek to enforce the consent for the purpose of the transfer to Hurd, describes a parcel of land in the cemetery known as Fantinekill Cemetery, in the town of Wawarsing, county of Ulster, N. Y., as " A piece or parcel of land to contain 250 square feet to be set off in the southwest corner of lot delineated and laid down as Lot No. 197, on map or plan of said cemetery in the possession of said association, and being a part of said Lot No. 197, as conveyed by said Fantinekill Cemetery Association, to the estate of Gilbert DuBois, by deed dated the 29th day of September, 1891."

From this description it is apparent that the deed to which the plaintiffs seek to enforce the consent of the defendant attempts to convey and make a division of lot No. 197, and to transfer 250 square feet to be set off in the southwest corner thereof. From the description, the shape of the 250 square-foot area is not shown or defined. The proposed deed does not pretend to set off any defined boundaries, or to determine whether the 250 square feet shall be in the form of a triangle, rectangle or square. The description seeks to make a division, which would require reconstruction and new determination as to the boundaries of the new proposed lot.

The defendant was incorporated under the provisions of chapter 133 of the Laws of 1847, and the acts amendatory thereof. The deeds of September 29, 1891, contained a number of conditions. One was as follows:

" *First.* All lots shall be held in pursuance of an Act of the Legislature of the State of New York, passed April 27, 1847, and the Acts amendatory thereof, and shall not be used for any other purpose than as a place for the burial of the dead."

Chapter 280 of the Laws of 1852 amended chapter 133 of the Laws of 1847, and by such amendment it was provided that " All lots or plats of ground designated on the maps filed as aforesaid, and numbered thereon as separate lots by the corporation, shall be indivisible."

The last quoted provision of law was in force September 29, 1891, and was restated in the Membership Corporations Law passed in 1895 (chap. 559, § 49), and is included in section 69 of the Membership Corporations Law as it now exists.

The purpose of the statute is clear. It is to prevent the replatting or changing of the map of the cemetery association's property. The very purpose of its being planned and laid out in lots is to have it so arranged that it will have lots of sizes, shapes and locations in keeping with an attractive symmetrical arrangement. It is not the purpose of conveying a cemetery lot that it should be used for speculation by the purchaser through division and sold off in competition with the association itself. Such seems to be one of the objections made to giving the consent sought, and the objection not only is well taken, but seems to be in keeping with the law applicable.

The deed of September 29, 1891, of lot No. 197 contains eleven other conditions, limitations and restrictions in addition to the one above quoted. They apply generally to the matter of interments, hedges, shrubs, trees, excavation of graves, and the right of trustees of defendant to make such by-laws, rules and regulations as they may deem requisite, and for the purpose of promoting the general objects of the association. All these conditions, limitations and restrictions show conclusively that the deed, if a transfer of the plot in question, was made as a sale or transfer for no other purpose than use as a cemetery lot. The land owned by the defendant could not be legitimately devoted to any other purpose. In view of its sale for such cemetery purpose exclusively, it is contended by the defendant that it was not required to consent to the transfer.

One of the limitations and restrictions in the deed was as follows:

" *Second.* No transfer or assignment of any lot or of any interest therein, shall be valid without the consent in writing of the trustees first to be had and endorsed upon such transfer or assignment."

It is to enforce such consent that this action is brought. In view of the attempted division of the lot, the consent cannot be enforced to the proposed deed. If it could be to a southwest

portion, it could then be enforced to the transfer of grave-size plots. Independent, however, of the attempted division of the lot, the above-quoted portion of the deed does not provide for a mere ministerial act on the part of the trustees. The conveyance of a burial lot makes the person to whom the conveyance is made subject to the provisions of the statute as well as the conditions, limitations and restrictions of the deed or conveyance of transfer under which he holds. The purpose of regulating and interfering with the transfer of cemetery lots in not unusual, and such conditions are generally incorporated in the deeds of transfer thereof. Such limitations and regulations are also provided in the statutes.

Chapter 344 of the Laws of 1891 required consent of the president of the association to the transfer of a cemetery lot. Section 11 of chapter 133 of the Laws of 1847, as amended by chapter 566 of the Laws of 1880, makes provision as to the inalienability of cemetery lots, under certain circumstances. Section 69a of the Membership Corporations Law, originally enacted in chapter 649 of the Laws of 1913, also provides that cemetery lots be held in inalienable form, and after such form of holding had been established, requires the consent of both the cemetery association and the lot owner. The clear purpose of the deed, as well as of the statutes, is that the right to give consent be with the cemetery association. The general rule, however, is that the law does not permit an arbitrary refusal of consent, but requires the exercise of a reasonable line of conduct. A reasonable line of conduct is based, however, upon all the facts and circumstances. The express language of the deeds, the clear legislative intent as shown from the statutes, and the purpose of creating and maintaining a cemetery association lead to the conclusion that the trustees of this defendant retained practically a complete control of the transfer of the cemetery lots. They could not act to satisfy a whim, nor could they act spitefully. Under the proof of this case, they acted within their rights, and the court should not attempt to override their determination.

The plaintiffs urge and allege in their complaint that the several lots were conveyed to the estate of Gilbert DuBois, in liquidation of an indebtedness that Gilbert DuBois had against the defendant, and that he at the time of his death had another lot in the cemetery known as the family lot, and that the lots conveyed on September 29, 1891, were not taken by the estate of Gilbert DuBois for the purpose of using the same for burial purposes, but for the reason that the defendant was not able to readily pay the indebtedness by it owing the said estate, and for the purpose of enabling the estate to reimburse itself for the money to it owing.

As to the purpose of Alvin P. DuBois, the son, in taking the

conveyance of the various lots I cannot determine. There being five children of Gilbert DuBois, and a conveyance of five separate lots, they may have been acquired for division among those interested in the estate.

If the property was purchased for the purpose of resale, and in payment of a debt from the association, then the conveyance made might be claimed to have been made in defiance of chapter 310 of the Laws of 1879, which was in force September 29, 1891. This law was entitled " An act to prevent the sale of lands used for cemetery purposes," and section 1 thereof provided: " No land actually used and occupied for cemetery purposes shall be sold under execution or for any tax or assessment, nor shall such tax or assessment be levied, collected or imposed, nor shall it be lawful to mortgage such land, *or to apply it in payment of debts,* so long as it shall continue to be used for such cemetery purposes." The last quoted provision of law is now incorporated in section 450 of the Real Property Law.

On account of the very nature of a cemetery association and for the purpose of preventing anything interfering with its obligation to plot owners being properly carried out, an indebtedness against a cemetery corporation cannot be enforced by a judgment, execution or receivership so as to affect the title to property held for cemetery purposes. Membership Corp. Law, § 70; *Hughes* v. *Pinelawn Cemetery,* 177 N. Y. Supp. 175. The sale of real property of a cemetery association, otherwise than its sale for use as a cemetery plot, should be carried through with permission of the court. Gen. Corp. Law, § 70; Membership Corp. Law, §§ 2, 13, 69.

In *Palmer* v. *Cypress Hill Cemetery,* 122 N. Y. 429, at page 434, the court, in considering the matter of transfer of a number of cemetery plots, states: " The sale of that number of lots to the plaintiff was not within the spirit or purpose of the statute from which the defendant derived its corporate existence and powers. The purpose for which the defendant was incorporated was to procure and hold land ' to be used exclusively for a cemetery or place of burial of the dead.' (L. 1847, ch. 133, §§ 1, 4.) The statutory direction is that at least one-half of the proceeds of sales of lots be applied to the payment of the purchase-money until finally paid, and the residue to the preservation, improvement and embellishment of the cemetery, and that the entire proceeds of sales be so applied, after the payment of the purchase-money, etc. (Id. § 7.) And the lands are exempt from taxes, and not liable to sale on execution, or to be applied in payment of debts due from individual proprietors. (Id. § 10.) It is contemplated by the statute that the trustees of the associations created pursuant

to it should, with a view to the proper management of cemeteries, designate the terms and restrictions upon which sales and conveyances be made."

The estate of Gilbert DuBois, at the time of the conveyance of September 29, 1891, had no enforcible claim against the defendant cemetery association, so far as the proof shows. Any claim that the estate might have had could not have been enforced by judgment, execution or receivership against the real property holdings of the association. If there was any such claim, it had existed, part of it, for nine years, and another part seven years, prior to the time of the giving of the deeds in question. The claims appear to have been outlawed.

There are no equities in this case on the part of the plaintiffs which would justify the court in overriding the determination of the defendant's trustees in refusing to approve the deed proposed. This is particularly so in view of the peculiar grant with restrictions, conditions and limitations therein contained; the circumstances under which the title is claimed to have been acquired; the name of alleged grantee; the attempted division of the cemetery plot and speculation in sale thereof; and the laws controlling and regulating the incorporation, ownership, control and dealings of cemetery associations.

The defendant is entitled to judgment dismissing the plaintiffs' complaint on the merits, with costs.

Judgment for defendant.