## CASE *v.* KELLY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF WISCONSIN.

No. 2. Argued January 26, 1888. — Decided January 6, 1890.

In the absence of an enabling statute, either general or special, a railroad or other corporation cannot purchase and hold real estate indefinitely, without regard to the uses to be made of it.

A provision in an act of a state legislature that the courts of the State shall be bound to take judicial notice of it after its passage and publication is binding upon the courts of the State, and also in proceedings in the federal courts in the same State.

The rule that the limitation of the power of a corporation in a State to receive and hold real estate concerns the State alone does not apply when the corporation, as plaintiff, seeks to acquire real estate which it is not authorized by law to acquire.

Under the circumstances of this case the trustee is entitled to receive the value of the improvements made by him in good faith upon the real estate in controversy, before being required to convey it.

THE case, as stated by the court, was as follows:

The Green Bay and Minnesota Railroad Company being in the hands of a receiver, namely, Timothy Case, in the Circuit Court of the United States for the Eastern District of Wisconsin, in a suit by the Farmers' Loan and Trust Company, to foreclose a mortgage on said railroad, said receiver was directed by the court to take possession of all the property, real and personal, of said company, namely, its road-bed, lands, right of way and all its other property and rights whatsoever, with authority to bring suits in the name of the railroad company as he should be advised by counsel to be necessary. Under this order Mr. Case, as receiver, brought the present suit, stating that he sues in behalf of said railroad company, and as receiver, the defendants David M. Kelly, Henry Ketchum and George Hiles and the Arcadia Mineral Spring Company, a corporation created by the laws of the State of Wisconsin.

The allegations of the bill are, that the defendants Kelly,

Ketchum and Hiles, who were officers of the railroad company during its period of construction, had procured numerous donations of land from citizens who were interested in the construction of the road, along its line, intended to be for the use and benefit of the railroad company, and to assist it in such construction. The fundamental allegation of the bill is, that these defendants, representing to the persons who made the donations that they were officers of the road, and soliciting these grants for the benefit of the road, took the conveyances to themselves individually; that they did this in a fraudulent manner, by making the grantors in the conveyances believe that they, as the officers of the company, could receive the conveyances for the benefit of the road; and that either the grantors did not really know to whom the conveyances were made, or were induced to believe that when made the grantees held the lands as a trust for the benefit of the road. These defendants not recognizing this trust, and the conveyances on their faces being merely conveyances to the individuals, either separately or collectively, to wit: to Ketchum, Kelly and Hiles, who now refuse to convey to the company or to admit its right to the lands, this suit is brought to have a declaration of the trust made by the court and a decree ordering conveyances by the defendants of the land to the corporation.

It is further alleged that the mortgage in process of foreclosure in the court under which Case is acting as receiver covered all the lands of the corporation, and would cover these lands if the title of the corporation in them was established.

The defendants Kelly, Ketchum and Hiles filed answers, in which they denied all fraud or deception, denied that they held the lands in trust for the railroad company, and denied the right of plaintiff to any relief. A decree for want of an answer was taken *pro confesso* against the Arcadia Mineral Spring Company; replications were filed to the answers, the case was put at issue as regards the three principal defendants, and an immense mass of testimony, documentary and otherwise, was taken.

The Circuit Court on the hearing was of opinion that the conveyances made by various persons to Kelly and Ketchum and Hiles of the lands described in the bill were made by the grantors and received by the defendants as contributions to the railroad company to aid in the construction of its road; and that if the railroad company had authority by law to receive such grants and to hold such real estate, it would be entitled to the relief sought in the bill in this case. But being also of opinion that, by the laws of Wisconsin, and under its charter, it could only receive and hold lands for the defined purposes of the road, it held that only such lands as were necessary and proper for the immediate use of the road could be recovered in this suit. *Case* v. *Kelly*, 13 Am. and Eng. Railroad Cas., 70. It therefore entered the following interlocutory decree:

"This day came the parties, by their counsel, and, on consideration of the pleadings and proofs in this cause and the arguments of counsel thereon, it is ordered, adjudged and decreed by the court that the complainant is entitled to recover from the defendants the title and possession of all such lands mentioned in the bill of complaint as are required by the railroad company for right of way, depot buildings and other necessary railroad purposes, as described and limited in the charter of the company, and that the bill of complaint as to all other portions of the lands described therein be dismissed.

"For the purpose of ascertaining what lands are required for right of way, depot grounds and other railroad purposes, as above stated, and also the extent and value of any improvements made by defendants, this cause is referred to Hon. James H. Howe, as special master of this court, who will take such additional proof as either party may offer upon reasonable notice, the evidence to close by the first day of October next, and the report of the master to be filed herein by the 20th day of October next. The master will accompany his report with such reasons as he may deem proper in support of the conclusions reached by him. For that purpose he may visit the premises and report the result of his personal examination."

The master made his report, accompanied by the testimony,

to which exceptions were taken both by Case, the receiver, and by the defendants Hiles and Kelly, which exceptions were overruled by the court, and a final decree entered. From this the present appeal is taken.

That decree, after specifying certain pieces of land which the court considered as necessary and proper to the road for its use in the way of track, right of way, depots and other similar, proper and necessary uses, ordered the conveyance of these pieces of land by Kelly and by Ketchum and by Hiles and by the Arcadia Mineral Spring Company to the railroad company. It also directed a master to ascertain and report the value of certain improvements made by Hiles upon a portion of this property, and report the same to the court, for which Hiles was to be paid in case complainant should elect to take such improvements.

*Mr. Walter C. Larned* (with whom was *Mr. Herbert M. Turner* on the brief) for appellant.

I. The act of incorporation of the Green Bay and Minnesota Railroad Company being a private act, the court cannot take judicial notice of it. *Atchison & Topeka Railroad* v. *Blackshire*, 10 Kansas, 477; *Horn* v. *Chicago &c. Railroad*, 38 Wisconsin, 463; *Perry* v. *New Orleans &c. Railroad*, 55 Alabama, 413; *Mandére* v. *Bonsignore*, 28 La. Ann. 415; *Broad Street Hotel Co.* v. *Weaver*, 57 Alabama, 26; *Chapman* v. *Coleby*, 47 Michigan, 46; *Workingmen's Bank* v. *Converse*, 33 La. Ann. 963; *Hailes* v. *State*, 9 Texas App. 170; *Leland* v. *Wilkinson*, 6 Pet. 317.

II. The State alone, by a proceeding *quo warranto*, has the right to inquire whether the corporation was exceeding its powers in the acquisition of real estate. *National Bank* v. *Matthews*, 98 U. S. 621; *Leazure* v. *Hillegas*, 7 S. & R. 313; *Cowell* v. *Springs Co.*, 100 U. S. 55; *Goundie* v. *Northampton Water Co.*, 7 Penn. St. 233; *Runyan* v. *Coster*, 14 Pet. 122; *The Banks* v. *Poitiaux*, 3 Randolph, 136; *S. C.* 15 Am. Dec. 706; *McIndoe* v. *St. Louis*, 10 Missouri, 575; *Gold Mining Co.* v. *National Bank*, 96 U. S. 640.

III. The trustee was not entitled to improvements. *Thompson.* v. *Thompson*, 16 Wisconsin, 91; *Waterman* v. *Dutton*, 6 Wisconsin, 265.

*Mr. George H. Noyes,* for Hiles, appellee, cited : *People* v. *Ottawa Hydraulic Co.,* 115 Illinois, 281; *Covington Draw Bridge Co.* v. *Shepherd,* 20 How. 227, 232; *Junction Railroad Co.* v. *Bank of Ashland,* 12 Wall. 226; *People* v. *River Raison &c. Railroad Co.,* 12 Michigan, 389; *S. C.* 86 Am. Dec. 64; *State* v. *Lean,* 9 Wisconsin, 279; *Clark* v. *Janesville,* 10 Wisconsin, 136; *Rochester* v. *Alfred Bank,* 13 Wisconsin, 432; *S. C.* 80 Am. Dec. 746; *Castello* v. *Landwehr,* 28 Wisconsin, 522; *Rensselaer & Saratoga Railroad* v. *Davis,* 43 N. Y. 137; *Cook* v. *Berlin Woolen Mills Co.,* 56 Wisconsin, 643; *S. C.* 43 Wisconsin, 433; *Benson* v. *Cutler,* 53 Wisconsin, 107; *Hadley* v. *Stewart,* 65 Wisconsin, 481; *Blodgett* v. *Hitt,* 29 Wisconsin, 169; *Green* v. *Dixon,* 9 Wisconsin, 532; *Pratt* v. *Thornton,* 28 Maine, 355; *S. C.* 48 Am. Dec. 492; *Spindler* v. *Atkinson,* 3 Maryland, 409; *S. C.* 56 Am. Dec. 755.

On January 26, 1888, the day on which the cause was argued, the death of Henry Ketchum, one of the appellees, was suggested, and on July 19, 1888, the appearance of his heirs and legal representatives was filed in the cause. On October 9, 1888, a motion was submitted asking for an order making the heirs and legal representatives of said Ketchum parties to the cause. On October 15th an order was made requiring the filing of affidavits to the effect that the persons named in the papers were the sole heirs and legal representatives of said Ketchum, and providing that in default thereof publication be made pursuant to the first section of rule 15. No affidavits having been filed pursuant to that order, on December 19, 1888, an order of publication was issued, and on July 6th, 1889, the order was duly published, and proof of publication thereof was filed in the clerk's office of this court September 12, 1889. The parties having failed to come in within the first ten days of this term, pursuant to the requirement of said rule, the appellant, on the 28th October, 1889, moved that such order or direction might be passed by the court as to it should seem

proper, or the exigency of the case might require. On the 4th of November, 1889, the court ordered that unless application should be made on behalf of the parties or either of them on or before the third Monday of that month to submit further argument in the case, it would be taken and considered upon the arguments then filed. No such application was made.

MR. JUSTICE MILLER, after stating the case, delivered the opinion of the court.

The principal question suggested by this appeal is, whether the complainant, as representing the railroad company, can maintain a suit for these lands; that is to say, whether the company was endowed by the legislature of Wisconsin with a capacity to receive an indefinite quantity of lands, with no limitation upon their use, or upon their sale, or whether they were limited to the lands necessary to such uses as were appropriate to the operations of a railroad.

It is not pretended that there is any general statute of the State of Wisconsin which authorizes either this company or any other corporation to purchase and hold lands indefinitely, as an individual could do, without regard to the uses to be made of such real estate. The charter of the company, approved April 12, 1866, Private Laws Wis. 1866, c. 540, p. 1331, authorizes it to acquire real estate, namely, the fee simple in lands, tenements and easements, for their legitimate use for railroad purposes. It is thus authorized to take lands 100 feet in width for right of way, and also such as is needed for depot buildings, stopping-stages, station-houses, freight-houses, warehouses, engine-houses, machine-shops, factories, and for purposes connected with the use and management of the railroad. This enumeration of the purposes for which the corporation could acquire title to real estate must necessarily be held exclusive of all other purposes, and, as the court said at the time of making its interlocutory decree, "it was not authorized by its charter to take lands for speculative or farming purposes."

It must be held, therefore, that there was no authority under the laws of Wisconsin for this corporation to receive an

indefinite quantity of lands, whether by purchase or gift, to be converted into money or held for any other purposes than those mentioned in its act of incorporation.

To this view of the subject counsel urges several objections. The first of these which we will notice is that the charter of the corporation is a private act of which the court cannot take judicial notice, and that as it was not pleaded nor offered in evidence, nor otherwise brought to the attention of the court, it could not be the foundation of its judgment. To this there are two sufficient answers. The first of which is, that if the statute creating this corporation gave it no power to receive and hold lands in the manner we have mentioned, then it had no such power by virtue of any law of the State of Wisconsin; for a corporation, in order to be entitled to buy and sell, to receive and hold, the title to real estate, must have some statutory authority of the State in which such lands lie, to enable it to do so, and the absence of such provision in the law of its incorporation does not create any general statute which authorizes any such right.

Another answer is, that in the charter of the railroad company itself, Laws of Wisconsin of 1866, chapter 540, section 14, it is expressly enacted that "this act is hereby declared to be a public act, and shall take effect and be in force from and after its passage and publication." To this it is replied by counsel for appellant that the statute of Wisconsin cannot make that a public law which in its essential nature is a private law. However this may be, we do not doubt the authority of the legislature of a State to enact that after the passage and publication of one of its statutes the courts of the State shall be bound to take judicial notice of it without its being pleaded or proven before them. This rule, thus prescribed for the government of the courts of the States, must be binding in proceedings in federal courts in the same State. Indeed, the distinction between public and private acts has become very artificial and shadowy since legislative bodies have adopted the principle of publishing in printed form all statutes which they pass. Some of the States keep up the distinction by making a difference in the manner in which

public and private acts shall be published, and in such cases this difference is to be observed and may become of some consequence, but the power of the legislature to declare in any case that after the passage and publication of any of its laws they shall be judicially noticed as public acts cannot, we think, be doubted.

It is next objected to the principle adopted by the court that the limitation upon the power of the corporation to receive land is one which concerns the State alone, and the title to such lands in a corporation can only be defeated by a proceeding in the nature of a *quo warranto* on behalf of the State. The case of *National Bank* v. *Matthews*, 98 U. S. 621, is strenuously relied on to support this view. We need not stop here to inquire whether this company can hold title to lands, which it is impliedly forbidden to do by its charter, because the case before us is not one in which the title to the lands in question has ever been vested in the railroad company, or attempted to be so vested. The railroad company is plaintiff in this action, and is seeking to obtain the title to such lands. It has no authority by the statute to receive such title and to own such lands, and the question here is, not whether the courts would deprive it of such lands if they had been conveyed to it, but whether they will aid it to violate the law and obtain a title which it has no power to hold. We think the questions are very different ones, and that while a court might hesitate to declare the title to lands received already, and in the possession and ownership of the company, void on the principle that they had no authority to take such lands, it is very clear that it will not make itself the active agent in behalf of the company in violating the law and enabling the company to do that which the law forbids.

Another alleged error in the decree of the court relates to that part of it which authorizes Hiles to recover the value of his improvements if the corporation chooses to take the improvements. We do not think this objection sufficient to reverse the decree. In the first place, the right of the plaintiff to have this land is not based so much upon the ground of the defendants having purchased it for the benefit of the road

as upon the offer of counsel of Hiles to convey it in case he were paid for the improvements. But if we suppose that Hiles held this land in trust for the benefit of the plaintiffs, and is willing to acknowledge that trust, there is no reason why, in a court of equity, when the complainant asserts his right to the land and claims to recover both the title and possession from his trustee, he should not pay the value of the improvements which that trustee has placed upon it. It is further to be observed that the option is given to complainant to take these improvements with the land or to reject the improvements and take the land without them, in which latter case he is merely required to give the owners of the improvements access to the land for the purpose of removing them. If he desires the improvements, he can keep them by paying for them. Hiles paid for the land when he got the title, and we see nothing unjust or inequitable in his receiving compensation for improvements made in good faith upon the land which he is now willing to convey to the company, if the company chooses to take them at their appraised value.

We are urged to consider that if this decree is affirmed dismissing the bill of the railroad company, the defendants will be left in the possession of property fraudulently acquired, of considerable value, for which they gave no consideration. The answer to this is, that such question cannot be raised by the plaintiff in this case, because, having no right to take the property, it is not injured by a decree of the court which fails to grant such right. The other questions must be between the defendants in this case and those from whom they took deeds of conveyance, or such other parties, public or private, as may show that they have an interest in the controversy.

The decree of the Circuit Court is

*Affirmed.*

Mr. Chief Justice Fuller did not hear this case and took no part in its decision.