(72 App. Div. 38.)

### GILBERT v. FINCH et al.

(Supreme Court, Appellate Division, First Department.   May 9, 1902.)

1. TRIAL—DIRECTED VERDICT—NECESSITY OF JURY.
     The trial court, after the discharge of the jury in a cause, cannot direct a verdict, as a verdict necessarily requires the presence of both court and jury.

2. INSURANCE—WASTE—PURCHASER OF INTEREST IN OTHER CORPORATIONS—LIABILITY OF DIRECTORS.
     The act of directors of an insurance company in using corporate assets to purchase the interest in a mutual insurance company of the surviving directors thereof, though such company has no assets or good will, even if in good faith, and to procure the business of the latter corporation, is an ultra vires act, constituting a waste of the funds of the purchasing corporation, which renders its directors liable to make good a loss resulting therefrom, at the suit of a receiver afterwards appointed for the purchasing corporation.

3. SAME—JOINT TORT FEASORS—RELEASE.
     . The directors of the purchasing and selling corporations are not joint tort feasors, and therefore the rule that the release of one joint tort feasor releases all does not make a settlement by the receiver with the directors of the selling corporation, and a release of them from liability, a defense to his action against the former.

4. SAME.
     A release of one of the directors of the purchasing corporation by its president and secretary, even if authorized by its board of directors, as required by its by-laws, would not operate to release the other directors, as being the release of a joint tort feasor, as the directors would be without power to release codirectors for malfeasance.

Appeal from trial term, New York county.

Action by William T. Gilbert, as receiver of the Commercial Alliance Life Insurance Company, against Edward L. Finch and others. From a judgment dismissing the complaint, the plaintiff appeals. Reversed.

See 61 N. Y. Supp. 300.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Henry D. Hotchkiss, for appellant.
Michael H. Cardozo, for respondent Ackerman.
Albert Stickney, for other respondents.

McLAUGHLIN, J.   This appeal is from a judgment dismissing the complaint entered on a verdict directed by the court.   There is little or no dispute as to the material facts involved.   The complaint alleges, and the evidence adduced upon the trial establishes, that the Commercial Alliance Insurance Company was incorporated in 1888 under the statutes of the state of New York, and that immediately following its incorporation it commenced and thereafter continued to do business until October, 1894, when the plaintiff was appointed receiver in an action brought for that purpose by the attorney general

of the state; that on and prior to the 3d of May, 1893, the defendants and other persons beyond the jurisdiction of the court were the directors of such company, and as such entered into negotiations with the surviving incorporators (10 in number) of the Maine & New Brunswick Insurance Company, a corporation organized under the laws of the state of Maine, for the purchase and control of the latter company by the former; that such negotiations were finally consummated on the day last mentioned, when one Dunham, the president of the Commercial Alliance Company, acting in pursuance of the direction of the defendants and their associate directors, took from the funds of such company $35,000, and paid the same to the 10 surviving incorporators of the Maine & New Brunswick Company, for "a valuable consideration," as expressed therein; and in connection with such bill of sale, Dunham and three others (all of whom were directors of the Commercial Alliance Company), received a transfer or assignment from such surviving incorporators, at the expressed consideration of $3,500 each, of "all their right, title, and interest as corporators, associates, or otherwise, in said Maine & New Brunswick Insurance Company"; that, simultaneously with the execution and delivery of such papers, under an agreement previously made, all of the officers and directors of the Maine & New Brunswick Company resigned, and their places were filled by some of the defendants or persons acting for or on behalf of the Commercial Alliance Company; that on the 22d of July, 1893, the Maine & New Brunswick Company was judicially declared by the supreme judicial court of Maine to be insolvent, and a receiver was appointed to wind up its affairs and distribute its assets among its creditors; that shortly thereafter, in an action brought by this plaintiff in the United States circuit court for the district of Maine against the 10 surviving incorporators of the Maine & New Brunswick Company, to recover the money paid to them, aggregating $35,000, the plaintiff received, as a compromise of such action, the sum of $25,000; and this action was brought to recover the difference between said sum and the $35,000 paid to them, together with interest thereon. It also appeared that the defendant Miller, some time prior to February 10, 1894, brought an action against the Commercial Alliance Insurance Company, which was settled by the payment to him of $8,000, and thereupon mutual releases were exchanged, the consideration expressed therein being $1. At the close of the trial each party moved for the direction of a verdict. The motions were denied, and thereupon the counsel for the plaintiff asked that the issues of fact be submitted to the jury, which request was granted; the court, however, refusing (notwithstanding it was requested so to do by defendant's counsel) to state to the jury the issues submitted. The jury were unable to agree upon a verdict, and were by consent of all the parties discharged, after which the court directed a verdict for the defendants, to which an exception was taken by the plaintiff.

Before considering the merits involved in the appeal, it may not be out of place to call attention to the fact that the practice pursued, so far as the same relates to or is involved in the direction of

the verdict, was not only irregular, but was entirely unauthorized. A verdict contemplates, and necessarily involves, the presence of both court and a jury, and whenever it is directed it is absolutely necessary that both be present.   There can, from the very nature of things, be no such thing as a verdict directed unless both the court and jury are present, because in such verdict there is involved an order by the court and an execution of the same by the jury.   Once a jury has been discharged, the court has no power to direct a verdict, because there is not only no one to direct, but no one to execute the direction.   Therefore, the exception taken to the direction in this case would, in and of itself, necessitate a reversal of the judgment appealed from, were it not for the fact that it was conceded upon the argument before us that the objection made and exception taken were not directed to the practice adopted; and in connection with this concession a request was made on the part of counsel for both of the parties that the error be overlooked and the case decided upon the merits.

Passing, then, from this question to the merits, we are of the opinion that the judgment must be reversed.   As already indicated, there is little or no conflict as to the facts.   Upon the facts as hereinbefore stated, the real question is whether the directors of an insurance company can take its property and assets and give them away, in the belief and with the expectation that such gift will ultimately benefit the company by bringing to it new business.   That directors have no such power cannot be seriously questioned.   The transaction by which $35,000 in money was taken from the Commercial Company and paid to the surviving incorporators of the Maine & New Brunswick Company was not only an ultra vires act, but it constituted a waste of the funds of the Commercial Company, and to such an extent that those who acquiesced in it or consented to it were liable to respond, not only to the stockholders, but to the creditors of the Commercial Company, to the extent of the funds used.   Mason v. Henry, 152 N. Y. 522, 46 N. E. 837. What was done was not a purchase of property at all, or even of the good will of a competing company.   The Maine company had nothing which it could sell.   It had no assets, and its good will, so far as value was concerned, was purely mythical, as evidenced by the fact that, within a few days after the consummation of the transaction with the Commercial, it passed into the hands of a receiver, on the ground that it was insolvent; and had it been otherwise, it had no more power to sell its good will than had the Commercial Company the power to buy it.   But what was done was not even an attempted purchase of either the assets or good will of that company.   The most charitable view that can be taken of the whole transaction is that the $3,500 paid to each of the surviving incorporators of that company was a gift (because there is no claim made that they had anything to transfer), in return for which they permitted the control of the corporation which they represented to pass into the hands of the persons representing the Commercial Alliance Company.   The Maine & New Brunswick Company parted with no property, nor did the Commercial Company receive any-

thing for the money paid. The new officers and directors of the Maine & New Brunswick Company, substituted for those who had resigned, even had there been any property or assets of that company, could not have turned it over to or used it for the benefit of the Commercial Company. The Maine Company, it will be remembered, was a mutual company. Its assets were not represented by stock. Its officers and directors, as such, had no interest whatever in the company or its assets, except to manage the same for all the members. Huntington v. Bank, 98 U. S. 388, 24 L. Ed. 777. The defendants, therefore, were not authorized, and they had no right whatever, to use the funds of the Commercial Alliance Company in the manner in which they did; and upon every principle applicable to the management of the business and affairs of a corporation, they must be held liable to make good the loss which was sustained.

Nor is the fact that they acted in good faith of the slightest importance or any excuse for what they did. It may be conceded, and it is undoubtedly true, that what the defendants did was done in good faith, upon the supposition that their acts would ultimately turn out for the best interests of the Commercial Company. It is not difficult to see the object sought to be accomplished by the transaction. It was the destruction of the Maine & New Brunswick Company, upon the supposition that, when destruction had finally taken place, out of its ruins would come disappointed policy holders, the majority of whom would be glad to surrender policies in that company and take new ones in the Commercial Company, for which the Commercial Company would receive the premiums, which would largely increase both its business and assets. But the directors, as indicated, had no power to use the funds of the Commercial Company for this purpose, and the courts, so far as we have been able to discover, never yet have sanctioned, but, on the contrary, have always condemned, this method of acquiring business. Once judicial sanction is given to it, it is not difficult to see how the funds of an insurance company might be used in a stock speculation, a mining scheme, or lost in many other ways which might be suggested. Good business methods forbid it, and the statutes of the state prohibit it.

But it is urged that the defendants cannot be held liable, since the release of the surviving incorporators of the Maine company by the payment of $25,000 released them. This suggestion is based upon the assumption that the defendants and the incorporators of the Maine company were joint tort feasors, and, therefore, the release of one constituted a release of all. But they were not joint tort feasors. The incorporators of the Maine company had a right to resign their offices, if they so desired. The property of that corporation was not by that act either destroyed or injured to any extent. The presumption was that the persons who took their places would discharge their duties according to law, and manage the business and affairs of the corporation in the interest of all the parties interested therein. Nor was there any objection, so far as the Maine company was concerned, to their receiving as a gift the money paid to them by the defendants in this action. But, inasmuch as the money paid

belonged to the Commercial 'Company, it could reclaim the same, and for that purpose could maintain an action for money had and received, upon the theory that there was an implied obligation on their part to restore it to the true owner. Mills v. Mills, 115 N. Y. 80, 21 N. E. 714; Trust Co. v. Gleason, 77 N. Y. 400, 33 Am. Rep. 632. And this seems to have been the theory upon which the action was brought against them, which they compromised by the payment of $25,000.

Nor did the release given by the Commercial Company to the defendant Miller release the other defendants. No authority whatever was shown on the part of the officers of the Commercial Company, who executed the release, to do so. It is true, Miller testified that he had a litigation with the Commercial Company, which was settled by the payment to him of the sum of $8,000, and upon such settlement mutual releases were exchanged. But it must be borne in mind that he was at that time a director of the Commercial Company, and his resignation was contemporaneous with his release. The release is general in form, was executed by Dunham, the president, and Whitehead, the assistant secretary. One of the by-laws of the Commercial Company provided that "no deed, instrument or contract of any description, except as provided in article 10, sec. 2, purporting to have been made on behalf of the company, and excepting in relation to the ordinary routine business of the company, shall be valid unless authorized by the board of directors or the executive committee." There is no evidence whatever, nor is there a suggestion in the record, that the board of directors or the executive committee ever authorized the execution of this release. Nor do we think the board of directors or executive committee would have had the power, had they attempted to exercise it, to release Miller. By his act, in connection with others, the property of the corporation had been wasted, and no act could have been done which would have released him or the others, except the restoration of the property to the corporation, or it had been made good for the loss which it had sustained. If he could be relieved from liability in the manner claimed, then it is not difficult to see how each one of the defendants could also have been released in a similar way. Directors cannot waste the funds of a corporation which they represent, and then relieve themselves from liability by a release granted by themselves or their codirectors.

At the close of the trial, therefore, the fact was uncontradicted that the defendants, as the directors of the Commercial Alliance Life Insurance Company, had unlawfully used, to the damage of the stockholders and creditors of that company, $35,000; that only $25,000 had been recovered; and they were, therefore, in law, liable for the difference, together with interest thereon, and a verdict should have been directed against them for that sum.

The judgment appealed from, therefore, must be reversed, and a new trial ordered, with costs to the appellant to abide the event of the action. All concur.