### WING v. DILLINGHAM et al.

(Circuit Court of Appeals, Fifth Circuit. February 5, 1917.)

No. 2808.

1. CORPORATIONS ⬉312(5)—TRANSACTIONS WITH DIRECTORS—OPTIONS.

Where a director of a corporation acquired timber land from the corporation under an agreement giving the corporation an option to purchase within a time fixed, the director, notwithstanding the nature of the contract, is bound to pay value, and cannot take the land at an immense profit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1383, 1385, 1386, 1388, 1389; Dec. Dig. ⬉312(5).]

2. CORPORATIONS ⬉312(5)—DIRECTORS—KNOWLEDGE OF.

A director, who acquired land from his corporation, is charged with knowledge that the corporation had acquired such land from a second company.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1383, 1385, 1386, 1388, 1389; Dec. Dig. ⬉312(5).]

3. CORPORATIONS ⬉312(5)—DIRECTORS—TRANSACTIONS.

Where a director purchased corporate property, the corporation may avoid the sale, at its option, unless the sale was fairly made, and the price was fair, and it was subsequently ratified by the stockholders, or the corporation delayed too long in seeking to avoid the sale.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1383, 1385, 1386, 1388, 1389; Dec. Dig. ⬉312(5).]

4. CORPORATIONS ⬉312(5)—TRANSACTIONS WITH DIRECTORS—PRICE.

Where the director of a corporation acquired from it timber land patented only a year before acquisition, the inadequacy of price cannot be justified on the ground that the director took the title subject to attack by adverse holders, for limitations do not run against the state, and no title by limitations could have been perfected within the time title was out of the state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1383, 1385, 1386, 1388, 1389; Dec. Dig. ⬉312(5).]

5. CORPORATIONS ⊂⇒312(5)—TRANSACTIONS WITH DIRECTORS—PRICE.

Where a corporate director acquired from his company timber land recently patented by the state to a third person, such director cannot justify the inadequacy of price on the ground that the right of the patentee to acquire the land was being brought into question, for that issue could not arise in collateral proceedings.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1383, 1385, 1386, 1388, 1389; Dec. Dig. ⊂⇒312(5).]

6. CORPORATIONS ⊂⇒312(7)—TRANSACTIONS WITH DIRECTORS—DELAY IN SETTING ASIDE.

Where the director of a corporation, which was in financial difficulties, acquired timber land belonging to it, advancing sums of money to discharge corporate debts, a delay of about 20 months in attacking the sale is not such a delay as will prevent the corporation from avoiding it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1391; Dec. Dig. ⊂⇒312(7).]

7. CORPORATIONS ⊂⇒312(5)—TRANSACTIONS WITH DIRECTORS—VACATION.

Where a director of a corporation acquired timber land belonging to it at a price allowing him approximately $250,000 profit, the transaction is voidable at the option of the corporation or its receiver; the rule being the same, though the director had paid value.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1383, 1385, 1386, 1388, 1389; Dec. Dig. ⊂⇒312(5).]

8. CORPORATIONS ⊂⇒312(7)—DIRECTORS—VACATION OF SALE.

Where a corporate director, at the request of the president, who was its general counsel, and his codirectors, six of whom were attorneys, acquired land belonging to the corporation, advancing sums to discharge its liabilities, such director is entitled, having been assured that the transaction was not objectionable, to an allowance of attorney's fees on the vacation of the sale at the suit of the receiver of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1391; Dec. Dig. ⊂⇒312(7).]

Appeal from the District Court of the United States for the Southern District of Texas; Waller T. Burns, Judge.

Suit by Charles Dillingham, as receiver for the Houston Oil Company of Texas, and others against Wilson D. Wing. From a decree for complainants, defendant appeals. Affirmed.

The following is the opinion below of Burns, District Judge:

This is a suit in equity by the Houston Oil Company, a Texas corporation, and its receiver, Charles Dillingham, to recover 12 sections of land from the defendant, Wilson D. Wing. The defendant was a director and stockholder in the corporation plaintiff. The corporation, at and prior to said time, was the owner of more than 850,000 acres of timbered lands situated in different counties in the eastern and southeastern parts of Texas. At a meeting of the directors of said company, held in the city of New York in November, 1903, the board of directors, consisting of nine members, six of whom were lawyers, the company being in great financial distress, urged their codirector, the defendant herein, to advance for its account the money necessary to pay the balance due Wallis, Landes & Co. upon a purchase of 12 sections of land and the timber thereon. There was at said time a balance of $5,672.45 due upon said timber contract; said note being due November 14, 1903, and being the

---

last of a series of five notes. On October 27, 1903, having theretofore purchased the timber, Wallis, Landes & Co. purchased from the state of Texas said 12 sections of land, paying $2 per acre therefor, receiving patents thereto in the month of November of the same year. January 14, 1901, Wallis, Landes & Company conveyed said lands and the pine timber growing thereon to the Beaumont Lumber Company. Under date of January 15, 1904, the Beaumont Lumber Company, at the instance of the Houston Oil Company, conveyed said lands and timber to defendant, Wilson D. Wing.

The defendant having agreed to advance the money necessary to pay off the debt due Wallis, Landes & Company, the Houston Oil Company, at a meeting of its directors in the city of New York, on the 26th day of January, 1904, adopted the following resolution; Wilson D. Wing not voting:

"Resolved, that the president of this company be and he is hereby authorized on behalf of this company to execute contract with Mr. Wilson D. Wing, in re Wallis, Landes & Co. lands, form of which contract is now before this board."

Acting under said resolution, the Houston Oil Company and Wilson D. Wing, the defendant herein, on January 27, 1904, executed the following contract:

"State of Texas, County of Harris.

"This agreement, entered into this day by and between Wilson D. Wing, of Bangor, Maine, party of the first part, and the Houston Oil Company of Texas, party of the second part, the said Houston Oil Company of Texas being a private corporation, duly incorporated under the laws of the state of Texas, and being authorized to make this agreement by resolution of its board of directors, duly passed, witnesseth:

"First. That Wilson D. Wing has purchased and now owns the following twelve tracts of land, each situated in Jasper county, Texas, and each patented to Wallis, Landes & Co. by the state of Texas, viz.: [Being the land described in the original bill in this suit.]

"Second. That said Wilson D. Wing hereby binds himself, his heirs, legal representatives, or assigns, to convey all of his right, title, and interest in and to the hereinbefore described lands to the Houston Oil Company of Texas, on or before six months from the date hereof, for the consideration of $6,749.12, and whatever sum said Wilson D. Wing may have to pay to his attorney or others for expenses connected with the sale of said lands to the said Beaumont Lumber Company by Wallis, Landes & Co. to the said Wilson D. Wing, and all taxes, and any counsel fees, traveling or other expenses which said Wing may deem it proper to incur in protecting the title to said property, or in caring for or protecting said lands or the timber thereon, and for the further consideration of the payment or assumption of payment by the Houston Oil Company of five certain promissory notes, each for the sum of $3,060.50, executed by the Beaumont Lumber Company to Wallis, Landes & Co., each bearing 10 per cent. per annum interest from October 27, 1903, payable semiannually, and each bearing date the ——— day of ———, 19—, payable to the order of Wallis, Landes & Co. in one, two, three, four, and five years after October 27, 1903, respectively, and for the further consideration of the payment by the said Houston Oil Company of Texas of 10 per cent. per annum interest on the said $6,749.12, and the expenses above referred to.

"Third. And the said Houston Oil Company of Texas, for the consideration above recited, agrees to purchase said lands from the said Wilson D. Wing on or before six months from this date, and to pay the cash consideration hereinbefore provided for, together with the interest as therein provided, and to pay or assume to pay the several notes to Wallis, Landes & Co. hereinbefore provided for.

"Fourth. If the Houston Oil Company of Texas, on or before six months from this date, shall pay the cash consideration hereinbefore provided for, including expenses as hereinbefore provided, and shall likewise pay or assume to pay the five certain promissory notes hereinbefore referred to, then the said Wilson D. Wing will execute and deliver to the said Houston Oil

Company of Texas a deed conveying to it all of his right, title, and interest in and to the said several tracts of land, with warranty clause against any one lawfully claiming or to claim any of said lands, by, through, or under said Wilson D. Wing, and no further.

"Fifth. It is specially understood and agreed that time is made the essence of this agreement, and that should the Houston Oil Company of Texas fail to pay the considerations, as hereinbefore provided, with interest thereon, as hereinbefore provided, within six months from this date, the five certain promissory notes, then the obligation of said Wilson D. Wing to sell said lands to the Houston Oil Company of Texas, and the obligation of said Houston Oil Company of Texas to purchase said lands from said Wilson D. Wing, shall each and both finally terminate, so that neither the said Wilson D. Wing, his heirs, representatives, or assigns, nor the Houston Oil Company of Texas, shall be any further liable in any manner whatsoever under this agreement, or have any damages for failure to comply with same.

"Sixth. It is specially understood that the Houston Oil Company of Texas shall, ten days before it calls for any conveyance hereunder, give to the said Wilson D. Wing notice in writing, by registered mail addressed to him at Bangor, Maine, that it is ready to close said purchase, and the close of the matter shall be made at the Merrill Trust Company, Bangor, Maine, all payments then to be made by the said Houston Oil Company of Texas, to be made either in cash or by certified check of a New York bank or trust company.

"Seventh. It is specially understood and agreed that this agreement is entered into in the state of Texas, and that it is to be governed by the laws of said state."

On the following day the Maryland Trust Company filed its bill of complaint against the Houston Oil Company and the Kirby Lumber Company with the clerk of this court at Houston, and receivers of said company were appointed on February 1st thereafter. The Oil Company and its receiver not being able to repay the said Wing the money so advanced within the time named in said contract, and the said defendant not consenting to extend the time for such payment, this suit, in the nature of a supplemental and ancillary bill, was filed March 20, 1906, a little less than 20 months from the expiration of said contract. The plaintiff tenders all sums of money expended by defendant with 10 per cent. interest upon each item of expenditure from the date thereof, and prays that defendant be adjudged to hold the title to said lands and timber growing thereon in trust for said Houston Oil Company. The defendant stands upon his contract and prays that he go hence with his costs.

It appears from the "Agreement as to Facts" and testimony upon the trial that the defendant arranged and subsequently paid the balance of the purchase money due upon the timber contract, said sum so due and paid, with interest, being $6,734.12, and assumed to pay the five notes, aggregating $15,000, due Wallis, Landes & Co. upon the sale of the land. It should be stated that the purchase price for the timber was $20,785, with interest at 10 per cent. from November 14, 1898, evidenced by five notes executed by the Beaumont Lumber Company in favor of Wallis, Landes & Co. due in one, two, three, four, and five years, respectively, from date; four of said notes being in the sum of $3,778.20 each. and the last note in the sum of $5,672.45, which last note was paid by defendant, Wing. The first and second notes were paid by the Beaumont Lumber Company; the third and fourth notes were paid by, or at the request and for the benefit of, the Houston Oil Company. It is stipulated between the parties that: "For the purpose of this case, it is agreed, if no other evidence is offered at the trial, that the amount of standing timber on the land in question at the date of Wing's purchase was 46,000,000 feet; but it is further agreed that at said time, and until after July, 1904, he had only a general knowledge as to the quantity of timber on said land."

Upon the trial further evidence was offered by the complainant, showing that each and every survey had been cruised and the timber thereon esti-

mated by experts, said work being completed in January, 1909, with the following result:

| Survey. | | Number of Feet. |
|---|---|---|
| 1. | 246 | 5,937,920 |
| 2. | 152 | 7,025,200 |
| 3. | 146 | 7,556,195 |
| 4. | 144 | 5,120,000 |
| 5. | 142 | 4,480,000 |
| 6. | 140 | 6,400,000 |
| 7. | 136 | 4,811,000 |
| 8. | 114 | 5,163,760 |
| 9. | 110 | 6,660,000 |
| 10. | 108 | 10,560,000 |
| 11. | 106 | 5,952,000 |
| 12. | 112 | 5,457,500 |
| | Total | 75,123,575 |

The evidence fixes the market value of the timber at $5 per thousand feet (testimony of John H. Kirby), and under the stumpage contract between the Houston Oil Company and the Kirby Lumber Company the latter was to pay said sum for each thousand feet so cut, which contract was well known to defendant.

[1] It would be well to examine the profit to the defendant as the result of this transaction. January, 1904, the defendant paid the sum of $6,734.12, being balance due for said timber, and assumed to pay five notes of $3,000 each, due in one, two, three, four, and five years, with interest at 10 per cent. from October 27, 1903; said notes with interest have been discharged by the defendant. The land thus acquired, without the timber, may be presumed to equal or exceed in value all that was paid therefor. The standing timber, under the evidence, is in excess of 75,000,000 feet, and at $5 per thousand reaches the sum of $375,000, showing a profit to the defendant by reason of the timber alone of more than one-third of $1,000,000. This of itself is all that equity will require to avoid the contract between the parties, and there are reputable authorities to the point that such a contract is absolutely void. This state of facts, perhaps, has never been witnessed before. Even if the transaction should be deemed an option to buy, the director would be required to pay the value of said option.

Under all the evidence, it clearly appears that the Beaumont Lumber Company held the land and timber in trust for the Houston Oil Company, and prior to the contract between the plaintiff and defendant conveyed by deed all lands and assets of every description to John H. Kirby, said deed being dated January 3, 1904, and said John H. Kirby held under said conveyance in trust for the Oil Company.

[2, 3] As a director, the defendant by law is charged with the knowledge that in 1901 the plaintiff acquired the holdings of the Beaumont Lumber Company. It was a matter generally known and had been given wide publication. The defendant became a holder of stock in the Oil Company in July, 1901, and conveyed large timber holdings to said company in exchange for the stock of said company. The option, running for six months, from Wing to plaintiff, may be eliminated. For illustration: Say that no option to buy was granted, would this change the status. If the Oil Company held the legal title to the land in question, and made fee simple conveyance to the defendant, would this aid or change the transaction? Surely not. It has never been held that a director can buy anything of value from the corporation he serves, unless the purchase is fairly made and to the advantage of the company. In all cases it is the uniform holding that the sale must be fairly and openly made and for a fair consideration, and then the sale is voidable at the election of the company. Wherever there has been a sale by the corporation to the director, in a suit to annul and avoid the same, if the plaintiff failed to recover, it was upon the grounds: First, the sale was fairly made;

second, the thing sold brought its value; third, the sale was subsequently ratified by the stockholders; or, fourth, the party at interest delayed too long.

[4] Defendant insists that he assumed the hazard of adverse litigation, in that he found squatters in possession of some of the land. This contention is not entitled to serious consideration. The title remained in the state until November, 1903, when patents issued. It requires a squatter to squat and so continue for ten years before he acquires title. His claim of title by limitation could only commence in this case after issuance of patent; limitation does not run against the state.

[5] Another suggestion of hazard and risk assumed by defendant, as he alleges, is that parties were bringing into question the right of Wallis, Landes & Co. to acquire the lands by purchase from the state. This issue could not arise in collateral proceedings. The state alone could complain, in a proper proceeding had for that purpose. Upon the authority of Twin Lick Mining Company v. Marbury, 91 U. S. 587, 23 L. Ed. 328, and upon all Texas authorities bearing upon the principle involved in this case, the plaintiff is clearly entitled to the relief for which he prays.

[6] In the case cited the purchase was made from the trustee at public sale after timely notice, and not from the corporation, and the decision concludes with this statement: "We think, both on authority and principle—a principle necessary to protect those who invest their capital and their labor in enterprises useful, but hazardous—that we should hold that plaintiff has delayed too long." The doctrine is well settled that the option to avoid such a sale must be exercised within a reasonable time. In the case referred to the bill was filed four years after sale by the trustee, and for this reason it is held that plaintiff waited too long.

[7] One of the most frequent frauds perpetrated upon a corporation and its stockholders is where one or more of the directors purchase property from the corporation, directly or indirectly, or participate in the profits of such a purchase. The law is well settled that a director's purchase of property from the corporation is voidable at the option of the corporation, even though the director paid fully as much as the property is worth. Cook on Corporations, § 653.

[8] The defendant is entitled to have returned to him all sums of money by him properly expended, with interest at 10 per cent. from date thereof. This the plaintiff tenders, and, upon said items of expenditure being ascertained and paid into the registry of the court, the plaintiff may have a decree for the land and timber involved. By reason of the facts in this case, the defendant having relied upon the statement of the president of the company, who was also its general counsel, familiar with Texas law, and recognized as a lawyer of experience and ability, should he, in equity, be compensated for the additional expense which he has incurred in preparing and defending this cause? If the court adopts this view, the solicitors of record agree that the court may fix the fee due and earned by his counsel, though plaintiff does not admit any liability upon this item.

It seems to me that conscience and good morals both require, under the peculiar facts of this case that the defendant should be made whole. Equity demands that the plaintiff do full justice in the premises. The defendant, by reason of yielding to the urgent importunities of the president and his co-directors, six of whom were lawyers, should not be required to sustain loss. The law does not permit him to profit. Equity would decree, by reason of his reliance upon the statements of so many lawyers of good repute, and moved to action thereby, that the defendant should not suffer a substantial injury. A fee of $10,000 to his counsel will be allowed, and the decree will so provide.

Henry C. Coke, of Dallas, Tex., for appellant.

H. O. Head, of Sherman, Tex., and T. M. Kennerly, of Houston, Tex., for appellees.

Before PARDEE and WALKER, Circuit Judges, and GRUBB, District Judge.

PER CURIAM. The judge who heard this case gave elaborate reasons for the decree rendered, and from our examination of the entire record, in the light of exhaustive briefs and oral argument, we find that the equities are with the appellees, and we concur in the reasoning and conclusions reached.

The decree appealed from is affirmed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes