**IRVING TRUST CO. v. DEUTSCH et al.**

No. 307.

Circuit Court of Appeals, Second Circuit.
Sept. 17, 1934.

Rehearing Denied Oct. 30, 1934.

Ernst, Gale, Bernays & Falk, of New York City (Murray C. Bernays, George G. Ernst, Emily C. Holt, and Abraham Friedman, all of New York City, of counsel), for appellant.

Strauss & Abrahams, of New York City (Jerome A. Strauss, of New York City, of counsel), for appellee Deutsch.

Rushmore, Bisbee & Stern, of New York City (Eldon Bisbee, H. G. Pickering, Stuart H. Steinbrink, and Randolph H. Guthrie, all of New York City, of counsel), for appellee Biddle.

White & Case, of New York City (Lowell Wadmond, of New York City, of counsel), for appellee Hammond.

Wagner, Quillinan & Rifkind, of New York City (Simon H. Rifkind and Sidney R. Nussenfeld, both of New York City, of counsel), for appellee Stein.

Hays, St. John, Abramson & Schulman, of New York City (John Schulman, of New York City, of counsel), for appellee Mendes.

Edwin L. Garvin, of New York City, for appellees Bell and V. C. Bell & Co., Inc.

Martin Conboy, of New York City, for appellees Reynolds and W. R. Reynolds & Co.

Lorenz & Lorenz, of New York City (Keith Lorenz, of New York City, of counsel), for appellee, on rehearing.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

A very complete statement of the facts may be found in the opinion of the District Court which by the terms of the decree appealed from stands as the findings of facts and the conclusions of law. For an understanding of the main issues raised by the appeal, the following summary will serve as an adequate introduction:

The plaintiff is the trustee in bankruptcy of a Delaware corporation, Sonora Products Corporation of America, whose corporate name was formerly Acoustic Products Company. For convenience the bankrupt will be referred to as Acoustic. It was chartered in 1927 to deal in phonographs, radios, and similar apparatus. In March, 1928, it was essential for Acoustic to acquire rights to manufacture under basic patents in the radio art, and it was believed that such rights might be acquired through the De Forest Radio Company, which was then in receivership in the Chancery Court of New Jersey. The defendant Bell was employed by Acoustic to negotiate with the defendants Reynolds and W. R. Reynolds & Co., who were in control of the De Forest situation by reason of a contract under which they expected to purchase 600,000 shares of stock at 50 cents per share, lift the receivership, and reorganize the De Forest Company. Although Bell's negotiations did not produce an arrangement of the sort originally contemplated by Acoustic, he did succeed, with the assistance of the defendant Biddle, in obtaining from Reynolds & Co. an offer of a one-third participation in the purchase of the 600,000 shares of De Forest stock; that is, 200,000 shares for $100,000 cash. The offer was directed to Messrs. Biddle and Bell, and provided:

"Your signatures on a signed copy hereof will constitute an agreement between us which will be subject to the approval of your board of Directors not later than April 9th 1928."

It also provided that, if the stock was taken, Acoustic's nominees should hold four of the nine places on the De Forest Company's directorate and that Acoustic should have the right to enter into a contract, subject to the approval of the De Forest board of directors, "to handle the managing, operating and selling of the De Forest products." This offer was presented to a meeting of the board of directors of Acoustic on April 3, 1928, and a resolution was passed instructing its president, the defendant Deutsch, to endeavor to obtain sufficient funds to enable Acoustic to carry out its obligations in the event of its final acceptance of the offer. On April 9th,

at an adjourned meeting of the board, Mr. Deutsch reported his inability to procure the necessary funds for Acoustic, and announced that "several individuals were desirous of accepting said proposition on their own behalf" and were willing to make arrangements so as to extend to Acoustic the benefits contemplated by the acquisition of the stock. Thereupon a resolution was adopted approving Mr. Biddle's acceptance on behalf of Acoustic and directing the proper officers to notify its acceptance to Reynolds & Co. On April 10th, Mr. Deutsch telegraphed Mr. Biddle of this action, with the explanation that it was understood by the directors that, if Acoustic could not finance the purchase when time for payment came, the directors would individually acquire the stock. Partial payment for the 200,000 shares was made on April 24th by the personal checks of Biddle, Deutsch, and Hammond, for which Reynolds & Co. gave a receipt to Acoustic. The balance was paid on May 25, 1928, at which time it was explained to Reynolds that the stock was being purchased by individuals since Acoustic was without available funds. He acquiesced and caused the stock certificates to be issued to Messrs. Bell, Biddle, Deutsch, Hammond, Stein, and White. For convenience these gentlemen are referred to as the Biddle syndicate. The defendant White was dismissed out of the case on an interlocutory motion for lack of proper venue. Mr. Bell turned over some of his shares to the defendants Martin and V. C. Bell & Co., formerly known as Mendes & Co. An active market for De Forest shares was created on the Curb Exchange, and the defendants made large profits in selling their shares. The bill of complaint seeks to hold the defendants jointly and severally to account for such profits. Jurisdiction of the District Court is founded on diverse citizenship.

The theory of the suit is that a fiduciary may make no profit for himself out of a violation of duty to his cestui, even though he risk his own funds in the venture, and that any one who assists in the fiduciary's dereliction is likewise liable to account for the profit so made. See Jackson v. Smith, 254 U. S. 586, 41 S. Ct. 200, 65 L. Ed. 413; Wing v. Dillingham, 239 F. 54 (C. C. A. 5); Trice v. Comstock, 121 F. 620, 61 L. R. A. 176 (C. C. A. 8); Wendt v. Fischer, 243 N. Y. 439, 154 N. E. 303; Blake v. Buffalo Creek R. Co., 56 N. Y. 485; Dutton v. Willner, 52 N. Y. 312; Farwell v. Pyle-National, etc., Co., 289 Ill. 157, 124 N. E. 449, 10 A. L. R. 363; Higgins v. Lansingh, 154 Ill. 301, 40 N. E. 362; Trenton Banking Co. v. McKelway, 8 N. J. Eq. 84. Concretely, the argument is that members of the Biddle syndicate, three of whom, Messrs. Biddle, Deutsch, and Hammond, were directors and one, Mr. Bell, its agent in procuring the contract, appropriated to themselves Acoustic's rights under its contract with Reynolds & Co. for 200,000 shares of De Forest stock, when as fiduciaries they were obligated to preserve those rights for Acoustic and were forbidden to take a position where personal interest would conflict with the interest of their principal. The other defendants are claimed to have assisted in their dereliction. In answer to this argument, the defendants do not deny the principle, but dispute its applicability to the facts.

First, it is argued that no contract was created between Acoustic and Reynolds & Co. because the latter's offer did not run to Acoustic but to Bell and Biddle as individuals. This contention deserves mention merely in order to show that it has not been overlooked. It is contradicted not only by the provision requiring the approval of the Acoustic's board of directors, but also by the resolution of April 9th, the subsequent conduct and correspondence of the parties, and the direct testimony of Mr. Biddle whose negotiations helped to produce the offer.

It is next contended that the contract was ultra vires Acoustic, and hence its directors and officers violated no fiduciary duty in taking stock which the corporation could not legally acquire. See Case v. Kelly, 133 U. S. 21, 10 S. Ct. 216, 33 L. Ed. 513; Lancaster Loose Leaf Tobacco Co. v. Robinson, 199 Ky. 313, 250 S. W. 997. Without pausing to determine the soundness of the asserted conclusion, we pass to a consideration of the premise. Access to the De Forest patents was concededly essential to Acoustic. It was thought that access to them could be obtained by buying a minority stock interest because four of the De Forest Company's nine directors were to be named by Acoustic and it was to have the opportunity to make a contract to manage the De Forest Company. It is true that the terms of such contract were yet to be drafted and submitted to the De Forest board of directors, but, with four directors committed to it, the prospect of getting the contract seemed bright. The management contract, carrying access to the patents, was a legitimate corporate purpose. So was stock ownership in the De Forest Company as a going concern. By Acoustic's investment, together with that of Reynolds & Co., the re-

ceivership was to be lifted and De Forest restored to the position of a going concern. No stock market operation was contemplated by Acoustic when it accepted the offer; that was a later development arranged between Reynolds and the Biddle syndicate on May 25th. In the light of these facts, we think the purchase was within the corporation's charter powers. Cf. Edwards v. International Pavement Co., 227 Mass. 206, 116 N. E. 266.

 The main defense asserted is that Acoustic by reason of its financial straits had neither the funds nor the credit to make the purchase and that the directors honestly believed that by buying the stock for themselves they could give Acoustic the advantage of access to the De Forest patents, while at the same time taking a stock speculation for their own benefit. In support of the proposition that the prohibition against corporate officers acting on their own behalf is removed if the corporation is itself financially unable to enter into the transaction, the appellees cite Hannerty v. Standard Theater Co., 109 Mo. 297, 19 S. W. 82; Grand Amusement Co. v. Palladium Amusement Co., 315 Mo. 907, 287 S. W. 438; Jasper v. Appalachian Gas Co., 152 Ky. 68, 153 S. W. 50, Ann. Cas. 1915B, 192. However, in the two latter cases the corporation was in fact insolvent. The plaintiff cites Wing v. Dillingham, 239 F. 54 (C. C. A. 5) as repudiating the above proposition. In Wing v. Dillingham a director of a corporation completed payments on timber land which the corporation had an option to purchase but was unable to pay for; the director taking title to the land and giving the corporation an option to acquire it by repaying his advances within six months. Long after the six months, and without repayment of the advances, the corporation's receiver was held entitled to avoid the transaction and require the director to account. The facts in the case at bar are even stronger against the defendant directors since here the directors absolutely bound Acoustic by contract to make the payments to Reynolds & Co., and thus subjected it to the risk of an action for damages for nonperformance, without committing themselves to it to relieve it of this obligation if necessary when time for payment should arrive. The defendants' argument, contrary to Wing v. Dillingham, that the equitable rule that fiduciaries should not be permitted to assume a position in which their individual interests might be in conflict with those of the corporation can have no application where the corporation is unable to undertake the venture, is not convincing. If directors are permitted to justify their conduct on such a theory, there will be a temptation to refrain from exerting their strongest efforts on behalf of the corporation since, if it does not meet the obligations, an opportunity of profit will be open to them personally. Cf. Trice v. Comstock, 121 F. 620, 623, 61 L. R. A. 176 (C. C. A. 8). Indeed, in the present suit it is at least open to question whether a stronger effort might not have been made on the part of the management to procure for Acoustic the necessary funds or credit. Thus it appears that Deutsch owed Acoustic $125,000 on his note due February 2, 1928, and secured by collateral. No effort was made to collect it or to realize on the collateral. The directors contend that they took no action because Deutsch thought that he had a defense to his note; but the validity of such defense, as well as whether the possibility of resorting to this asset was actually considered, is very doubtful. After April 9th no efforts appear to have been made to raise for Acoustic the $100,000 required for the De Forest stock. Moreover, Acoustic did have substantial banking accommodations on June 6th, and, if these had been made available a few weeks earlier, it would have been able to perform its contract with Reynolds & Co. While these facts raise some question whether Acoustic actually lacked the funds or credit necessary for carrying out its contract, we do not feel justified in reversing the District Court's finding that it did. Nevertheless, they tend to show the wisdom of a rigid rule forbidding directors of a solvent corporation to take over for their own profit a corporate contract on the plea of the corporation's financial inability to perform. If the directors are uncertain whether the corporation can make the necessary outlays, they need not embark it upon the venture; if they do, they may not substitute themselves for the corporation any place along the line and divert possible benefits into their own pockets. "Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions." Meinhard v. Salmon, 249 N. Y. 458, 464, 164 N. E. 545, 546, 62 A. L. R. 1.

 The defendant Bell was Acoustic's agent in the original negotiations with Reynolds, and it is urged by the plaintiff that as such agent he was a fiduciary precluded from making profits out of the subject-matter of his agency. On his behalf it is contended that

his agency was ended when he delivered to Acoustic the written offer of Reynolds & Co. and that his participation in the Biddle syndicate was not by virtue of his former agency relationship nor because of any information he had obtained as Acoustic's agent; that he stands like any stranger to whom the syndicate might have offered a participation. But, even if the fact of his agency be disregarded, we think there is an applicable principle which requires him to account, namely, that one who knowingly joins a fiduciary in an enterprise where the personal interest of the latter is or may be antagonistic to his trust becomes jointly and severally liable with him for the profits of the enterprise. Jackson v. Smith, 254 U. S. 586, 589, 41 S. Ct. 200, 65 L. Ed. 418. Cf. Wendt v. Fischer, 243 N. Y. 439, 444, 154 N. E. 303. Although Bell testified that "My knowledge of what Acoustic did or intended to do with respect to Reynolds' offer of March 31st was limited to what Deutsch told me around the 9th of April," and although precisely what he was told does not appear, nevertheless Bell says that on April 7th or 9th he agreed with Mr. Deutsch that, if the latter was not successful in raising the purchase money for the stock from his own associates, he would join him to the extent of $25,000. This agreement, made at a time when the offer was still open for acceptance by the corporation, brings Bell within the principle above enunciated.

■■ The defendant Stein was an employee of Acoustic, holding the position of chief engineer at the time he became a member of the Biddle syndicate. A mere employee of a corporation does not ordinarily occupy a position of trust or confidence toward his employer unless he is also an agent in respect to the matter under consideration. See Palmer v. Cypress Hill Cemetery, 122 N. Y. 429, 25 N. E. 983. Stein had no part, as did the directors, in binding the corporation to the contract to purchase the stock; nor can he be held on the principle applied to the defendant Bell. Shortly after the April 9th meeting Mr. Deutsch told him that the directors had decided that Acoustic did not have the funds to purchase the stock and that Deutsch, Biddle, Hammond, and others were to purchase it on their own account. Early in May Stein was informed that one of the participants, Mr. Dows, had withdrawn and he was asked to take stock thus made available. He consented because it might assist Acoustic to get access to the De Forest patents. So far as appears, Stein did not see the minutes of the April 9th meeting, and may well have

understood from his conversation with Deutsch that the company had rejected Reynolds & Co.'s offer, and that the individuals had then made an independent contract with Reynolds & Co. He is not shown to have had affirmative knowledge that the directors with whom he joined were pursuing a course which would make their personal interests antagonistic to those of Acoustic.

■ The same is true as to defendants Mendes and Mendes & Co. (now V. C. Bell & Co.). After the Biddle syndicate had taken over the De Forest stock, Bell attempted to obtain their participation in his $25,000 commitment. Mendes did not personally participate, but permitted his company to do so to the extent of $7,000 as a favor to Bell. No knowledge that Acoustic had accepted the offer was brought home to Mendes or his company.

■ The claim against Reynolds & Co., which is also made to encompass Reynolds as its president, is that the acceptance by Acoustic of the offer of March 31st made them joint adventurers in the reorganization of the De Forest Company and so placed on Reynolds & Co. the duty of respecting and conserving Acoustic's rights. The District Judge found that there is no basis for the claim that a relationship of coadventurers ever existed between them. In this we agree. Reynolds & Co. was only a party to a contract with Acoustic which at most it failed to perform. It would be liable for breach of contract if Acoustic had put it in default by paying or tendering the sum due, but this was never done. The plaintiff also argues that Reynolds & Co. knowingly participated with the directors of Acoustic in the breach of their fiduciary duty. However, Reynolds & Co. had the right to sell to whomever it could, and, on being informed that Acoustic was not able to perform, it was justified on that information in making the sale to the syndicate. No right of Acoustic was violated in so doing, as Acoustic could demand the stock only on fulfilling its own obligation. Reynolds & Co. was not obliged to prejudice this opportunity to dispose of the stock nor to investigate scrupulously the intracorporate affairs of Acoustic. Since it received no benefit from the transaction aside from completing the sale of the stock and there is no proof that it acted in a conspiracy to deprive Acoustic of a valuable asset, it cannot be held to an accounting. See Wendt v. Fischer, 243 N. Y. 439, 444, 154 N. E. 303.

■ There remains to be considered the effect of the release given to Deutsch. On July 7, 1929, Mr. Deutsch resigned his position as

president due to disagreement with the other directors. He made certain claims on the corporation for sums which he had advanced to it, and the corporation made certain cross-claims against him none of which involved the De Forest transaction. Not being able to come to an agreement, Deutsch finally brought an action. On November 16, 1929, a settlement was reached, and general releases were executed and delivered by each party to the other. The District Judge held that this release was an independent bar to any recovery against Deutsch, but that, so far as the other defendants were concerned, the claim, being of an equitable nature and not for a joint tort, was severable and consequently the release would not operate to discharge them. We cannot agree that this release operated to discharge any of the defendants from liability. The only directors on the board at the time this release was executed who knew of the De Forest transaction were the defendants Hammond, Biddle, and Bell. None of the other directors appears to have had any notion concerning it and Deutsch did not make any disclosure. The company had never made any claim against him on account of the stock, and no intention to relinquish such a claim can be found. Since Deutsch at the time of the transaction was in a fiduciary relation to Acoustic, the general release cannot be held to include this transaction without a full and frank disclosure by Deutsch of the circumstances. Insurance Co. of North America v. Whitlock, 216 App. Div. 78, 85, 214 N. Y. S. 697; Gilbert v. Finch, 72 App. Div. 38, 44, 76 N. Y. S. 143; Id., 173 N. Y. 455, 460, 66 N. E. 133, 61 L. R. A. 807, 93 Am. St. Rep. 623; Maas v. Lonstorf, 194 F. 577, 587 (C. C. A. 6); Hawker v. Worley, 33 F.(2d) 491, 493 (C. C. A. 8). The cases on which defendants rely did not concern fiduciary relations and are distinguishable on that basis.

For the foregoing reasons, the decree of dismissal is reversed as against Bell, Biddle, Deutsch, and Hammond; as to the other defendants, it is affirmed.

### On Petition for Rehearing.

PER CURIAM.

By petition for rehearing counsel for the defendant Bell asserts that so much of our opinion as imposes liability upon him rests on a mistaken premise as to what the record discloses. Bell's testimony, not previously called to our attention, does show to be incorrect the statement in our opinion to the effect that "precisely what he (Bell) was told does not appear." But this testimony does not in our view change the result. Bell was not told, as was Stein, that Acoustic had rejected Reynold's offer; he made his commitment at a time when the offer was still open for acceptance by the corporation. He should not join with directors, whose duty was to determine with an eye single to the interests of their corporation whether to make the contract on its behalf, in an enterprise in which their personal interests might be antagonistic to their fiduciary obligations.

The petition is denied.